Michael Bleicher (SBN 313892)
michael.bleicher@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5251

*Attorney for Defendant*
*Zenleads, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANELLE COCHRANE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZENLEADS, INC., D/B/A APOLLO.IO,<br><br>Defendant. | Case No.: 25-cv-04970-WHO<br><br>Assigned to: Hon. William H. Orrick<br><br>**DEFENDANT'S AMENDED NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge:        Hon. William H. Orrick<br>Hearing Date: January 7, 2026<br>Time:          2:00 p.m.<br>Courtroom:   2-17th Floor<br><br>Removed from San Francisco Superior Court Case No. CGC-25-624186 |

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WO

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 7, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable William H. Orrick in Courtroom 2 of this Court, located on the 17th Floor of 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Zenleads, Inc. ("Apollo") will and hereby does move this Court for an order granting its Amended Motion to Dismiss with prejudice the Complaint ("Complaint" or "Compl.") filed by Plaintiff Janelle Cochrane, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Amended Notice of Motion; the supporting Amended Memorandum of Points and Authorities; the Declaration of Michael Bleicher; the Request for Judicial Notice; the complete record in this action; and such matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated: November 25, 2025                     ZWILLGEN PLLC

                                             By:  /s/ Michael Bleicher
                                             Michael Bleicher (SBN 313892)
                                             Michael.bleicher@zwillgen.com

                                             *Attorney for Defendant*
                                             *Zenleads, Inc.*

- 1 -

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD.........................................................................................................4

ARGUMENT .....................................................................................................................4

I.    Plaintiff lacks statutory standing to sue under Colorado law. ............................4

II.   Plaintiff fails to state a claim under the Listing Provision.................................6

III.  Plaintiff is barred from seeking class relief for violations of the PTFA. ............9

IV.   The Listing Provision is unconstitutional. ........................................................10

      A.    The Listing Provision is unconstitutionally vague...................................10

      B.    The Listing Provision violates the Dormant Commerce Clause ("DCC"). ...........11

      C.    The Listing Provision violates the First Amendment on its face..........................12

            1.    Content-based speech restrictions are constitutionally suspect. ...............12

            2.    The Listing Provision is a content-based restriction on protected speech.............................................................................13

            3.    The Listing Provision does not target commercial speech. .....................14

            4.    Section 304(4)(a)(I) fails strict scrutiny......................................................16

                  i. The PTFA does not further a compelling government interest. ............16

                  ii. The Listing Provision is not narrowly tailored. ...................................16

                  iii. The PTFA does not use the least restrictive means available...............18

CONCLUSION...................................................................................................................19

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
    475 F.3d 1080 (9th Cir. 2007) ........................................................................6

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004)......................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................4, 6

*Atlas Data Priv. Corp. v. We Inform, LLC*,
    758 F. Supp. 3d 322 (D.N.J. 2024) ...............................................................13

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001).......................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................4, 8

*Benton v. Avedon Eng'g, Inc.*,
    No. 10-CV-01899-RBJ-KLM, 2012 WL 5866303 (D. Colo. Nov. 19, 2012)..........................5

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)........................................................................................15

*Brayshaw v. City of Tallahassee*,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010)..........................................................13

*Brown v. Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011)....................................................................................16, 17

*Crowe v. Tull*,
    126 P.3d 196 (Colo. 2006)..............................................................................5

*Curran v. Home Partner Holdings LLC*,
    No. 23-cv-01279-DDD-MDB, 2024 WL 1829266 (D. Colo. Mar. 20, 2024)..........................7

*Danan v. Outform Inc.*,
    No. 19-CV-02444-SVK, 2019 WL 6771828 (N.D. Cal. Dec. 12, 2019) .................................4

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ..............................................................13, 14, 15

*Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*,
    519 F. Supp. 3d 893 (D. Colo. 2021)................................................................6

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012)..........................................................................................................10

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) ...........................................................................................10

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   No. 12-CV-02432-WYD-KMT, 2015 WL 4036319 (D. Colo. July 1, 2015).......................10

*Hall v. Walter*,
   969 P.2d 224 (Colo. 1998)...................................................................................................5

*Hamilton v. Amazon.com Servs. LLC*,
   2024 WL 158760 (10th Cir. Jan. 12, 2024) ........................................................................7

*Harris v. Life Ins. Co. of N. Am.*,
   419 F. Supp. 3d 1169 (N.D. Cal. 2019) ...............................................................................8

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...........................................................................................15

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ....................................................................................13, 14

*Jackson v. Whitepages, Inc.*,
   2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025)...........................................................14, 15

*Kolender v. Lawson*,
   461 U.S. 352 (1983)..........................................................................................................11

*Lair v. Murry*,
   846 F. Supp. 2d 1116 (D. Mont. 2012)...............................................................................11

*Lakewood v. Plain Dealer Publ'g Co.*,
   486 U.S. 750 (1988)..........................................................................................................15

*Metro One Telecomms., Inc. v. Comm'r*,
   704 F.3d 1057 (9th Cir. 2012) ............................................................................................6

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023)..........................................................................................................11

*Nero v. Am. Fam. Mut. Ins. Co.*,
   No. 11-CV-02717-PAB-MJW, 2012 WL 4478958 (D. Colo. Sept. 28, 2012) ........................5

*Ostergren v. Cuccinelli*,
   615 F.3d 263 (4th Cir. 2010) ...........................................................................................18

*Pearson v. Geico Cas. Co.*,
   No. 17-CV-02116-CMA-MEH, 2018 WL 2096348 (D. Colo. May 7, 2018)........................10

iii

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)..................................................................................................11

*Przekurat by & through Przekurat v. Torres*,
    2018 CO 69, 428 P.3d 512.........................................................................................6

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017)......................................................................13

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)...............................................................................12, 13, 16, 17

*Reno v. ACLU*,
    521 U.S. 844 (1997)..................................................................................................18

*Schrader v. Dist. Att'y of York Cnty.*,
    74 F.4th 120 (3d Cir. 2023) ......................................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................................................9

*Sheehan v. Gregoire*,
    272 F. Supp. 2d 1135 (W.D. Wash. 2003).........................................................13, 18

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..................................................................................................13

*South Dakota v. Wayfair, Inc.*,
    585 U.S. 162 (2018)..................................................................................................11

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014)......................9

*The Fla. Star v. B.J.F.*,
    491 U.S. 524 (1989)..................................................................................................18

*TikTok Inc. v. Garland*,
    604 U.S. 56 (2025)....................................................................................................12

*Tucker v. Whitepages, Inc.*,
    Case No. 24-cv-03500, ECF No. 27 (D. Colo.).........................................................2

*U.S. Olympic Comm. v. Am. Media, Inc.*,
    156 F. Supp. 2d 1200 (D. Colo. 2001).....................................................................15

*United States v. Alvarez*,
    567 U.S. 709 (2012)............................................................................................16, 18

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)............................................................................................12, 18

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...............................................................................................4

*Victory Processing, LLC v. Fox*,
    937 F.3d 1218 (9th Cir. 2019) ...........................................................................................18

*Walters v. Metro. Educ. Enters., Inc.*,
    519 U.S. 202 (1997)..............................................................................................................6

*Williams-Yulee v. Fla. Bar*,
    575 U.S. 433 (2015)............................................................................................................16

**Statutes**

47 U.S.C. § 227 (Tel. Consumer Prot. Act).............................................................................18

Cal. Civ. Code § 1798.83.5......................................................................................................14

Colo. Rev. Stat. §§ 6-1-101 *et seq*. (Colo. Consumer Prot. Act).......................................1, 4, 5, 10

Colo Rev. Stat. § 6-1-113 ......................................................................................................5, 9

Colo. Rev. Stat. § 6-1-301 *et seq*. (the "PTFA") .............................................................1, 2, 9, 12

Colo. Rev. Stat. § 6-1-301 ...................................................................................................2, 3, 16

Colo. Rev. Stat. § 6-1-303 ......................................................................................................18

Colo. Rev. Stat. § 6-1-304 .............................................................................................. *passim*

Colo. Rev. Stat. § 6-1-305 ......................................................................................................5, 9

**Constitutional Provisions**

U.S. Const. amend. I ..........................................................................................................12, 15

**Rules**

Fed. R. Civ. P. 8......................................................................................................................4

Fed. R. Civ. P. 23....................................................................................................................9

**Other Authorities**

*Attorney / LLP Search & Disciplinary History*, Att'y Regul. Couns.,
    https://www.coloradolegalregulation.com/attorney-search/ ...............................................17

*Candidate Search*, Colo. Sec'y of State,
    https://tracer.sos.colorado.gov/PublicSite/SearchPages/CandidateSearch.aspx.....................17

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

*Directory*, American Heritage Dictionary,
https://ahdictionary.com/word/search.html?q=directory&submit.x=34&submit.y
=10 ..............................................................................................................................8

*Know*, American Heritage Dictionary,
https://ahdictionary.com/word/search.html?q=know...............................................7

*Know*, Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/know (last accessed Nov. 5, 2025).......................................7

*List*, American Heritage Dictionary,
https://ahdictionary.com/word/search.html?q=list....................................................7

*List*, Merriam Webster Dictionary, https://www.merriam-
webster.com/dictionary/directory ............................................................................8

*List*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/list.................7

*Public Voter Data and Information Requests FAQs*, Colo. Sec'y of State,
https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html......................17

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

**INTRODUCTION**

Plaintiff Janelle Cochrane attempts to unearth a vague and never-before-used Colorado law intended to combat fraudulent telemarketing practices to create a national prohibition on displaying cell phone numbers. Plaintiff's complaint centers on claims that defendant Zenleads, Inc. ("Apollo"), a business-to-business ("B2B") sales intelligence platform, violated Colorado's Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-301 *et seq*. (the "PTFA") because her number theoretically *could* be obtained through Apollo's website. The Complaint fails to state a claim for several independent reasons.

***First,*** Plaintiff lacks standing to bring this action because she fails to allege an injury as required under the PTFA. The Complaint does not allege that Plaintiff has suffered any injury. In fact, Plaintiff does not allege that she received a single phone call because of any action Apollo took. Instead, the Complaint at best speculates that *if* certain harms happen to Plaintiff in the future and *if* the PTFA applied to Apollo, Apollo *could* be liable. Recitations of the elements of a cause of action and speculative "what if . . . " style pleading lacks the reasonable precision and particularity needed to establish standing under the PFTA and survive a motion to dismiss.

***Second***, even if Plaintiff had alleged an actual injury, the Complaint fails to state a claim under the PTFA. The statute prohibits entities from "knowingly listing" a Colorado mobile number in a "directory" absent consent. But the Complaint fails to allege with any particularity that Apollo *knew* Plaintiff's number was a Colorado mobile number assigned to a mobile phone she owned, rather than a mobile number assigned to a telephone owned by a non-Coloradan, or that Apollo maintains a "directory" of mobile numbers.

***Third***, the PTFA bars the relief Plaintiff demands. The PTFA is a subset of the Colorado Consumer Protection Act (the "CCPA"). The CCPA permits class action relief for actual damages but not for statutory damages. Plaintiff fails to plead any actual damages and thus her claims for damages under the statute should be dismissed.

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

*Fourth*, the PTFA is unconstitutional. The PTFA is unconstitutionally vague, violates the Dormant Commerce Clause ("DCC"), and contravenes the First Amendment by regulating content-based speech without overcoming strict scrutiny.

Even if Plaintiff could amend the Complaint to cure the conclusory allegations regarding her injuries—and it is unclear how she could—no amendment can cure the PTFA's inapplicability to Apollo's business or the statute's constitutional defect. Plaintiff's claims should be dismissed with prejudice.

**BACKGROUND**

This case is one of several actions Plaintiff has recently filed under the PTFA, which are just a subset of actions Plaintiff's counsel have filed in Massachusetts, New York, Washington, California, and Florida—but not Colorado, to whose citizens the PTFA's protections apply.[1] Before Plaintiff's counsel filed its first wave of actions in March of 2024, no party had *ever* brought an action under Colo. Rev. Stat. § 6-1-304(4)(I) ("the Listing Provision").

The Colorado legislature passed the PTFA in 1993 to protect consumers from "fraudulent and deceptive commercial telephone solicitation [that] has caused substantial financial losses to thousands of consumers." Colo. Rev. Stat. § 6-1-301. These cases involve a 20-year-old amendment to the PTFA that states:

> **(a)** On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> **(I)** Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]
>
> . . .

[1] Plaintiff's counsel first filed five PTFA cases filed in rapid succession in the U.S. District Court of Colorado in December 2024. But as the Colorado court became aware of the links between these cases and reassigned them to the same judge (the Hon. Daniel D. Domenico), Plaintiff's counsel abruptly dismissed them without prejudice on March 12 and March 14, 2025. *See, e.g.*, *Tucker v. Whitepages, Inc.*, Case No. 24-cv-03500, ECF No. 27 (D. Colo.). Approximately one month later, those cases resurfaced and others, including this case, were filed by the same counsel everywhere but Colorado.

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

**(b)** This subsection (4) shall not apply to a commercial telephone solicitation that is in relation to a preexisting commercial relationship between the person and the person who owns the cellular telephone.

Colo. Rev. Stat. § 6-1-304(4)(a)(I). No litigant had brought claims under the Listing Provision before Plaintiff's counsel. Nor had Colorado's Attorney General ever sought to enforce the Listing Provision. Indeed, at the time the Listing Provision was enacted, websites like Apollo's did not exist; rather, online databases typically contained only landline numbers. Despite the statute's clear purpose to regulate fraudulent and deceptive telemarketing (*see* Colo. Rev. Stat. § 6-1-301), Plaintiff does not allege that she received a single unwanted or deceptive call because of any action Apollo took.

Founded in 2015, Apollo is a data intelligence and sales platform that assists sales professionals from both startups and global enterprises by helping them identify B2B prospects and increase quality conversations.[2] Apollo's database is directed to sales professionals who sell products and services to other businesses, *not consumers*.[3] Apollo provides a service "that facilitate[s] identifying and acquiring potential business-to-business leads" using "contact details, business categories, industry, size, location, and other relevant data." ECF No. 1-1 ("Compl.") ¶ 16.

Plaintiff resides in Brighton, Colorado. *See id.* ¶ 10. The Complaint provides scant detail about Ms. Cochrane or how Apollo's alleged practices affected her. Plaintiff alleges her "cellular telephone was listed by Defendant in its directory, available at apollo.io, to advertise and/or actually sell products and services." *Id.* According to Plaintiff, "Defendant never requested—and Plaintiff never provided—affirmative consent, through written, oral, or electronic means to such listing." *Id.* Plaintiff does not allege that she ever requested Apollo to delete her telephone number. Plaintiff makes no further factual allegations that are specific to her experience. Nonetheless, Plaintiff asserts a cause of action under the Listing Provision on behalf of herself and a putative class including "all Colorado residents whose cell phone numbers were listed on apollo.io." Compl. ¶¶ 36, 43–45.

---

[2] *See Who is Apollo.io?*, Apollo.io, https://www.apollo.io/about (last accessed Nov. 17, 2025).
[3] *See id.*

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

Plaintiff filed this case in San Francisco Superior Court on April 8, 2025. *See* ECF No. 1-1. Apollo timely removed the case on June 12, 2025. *See* ECF No. 1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. Although a court generally must accept as true the allegations in a complaint, this rule is "inapplicable to legal conclusions," *id*., and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Danan v. Outform Inc.*, No. 19-CV-02444-SVK, 2019 WL 6771828 at *1 (N.D. Cal. Dec. 12, 2019) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted).

If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)) (cleaned up). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id*. "A court may [] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

**I.      Plaintiff lacks statutory standing to sue under Colorado law.**

Plaintiff fails to allege actual injury as required by the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101 *et seq*.) (the "CCPA"), of which the PTFA is a subpart. The CCPA permits "any person who . . . [i]s an actual or potential consumer of defendant's goods, services, or property **and is injured** as a result of" a deceptive trade practice, to pursue a civil action for

damages. Colo Rev. Stat. § 6-1-113(1)(a) (emphasis added). The Colorado Supreme Court has explained that plaintiffs must demonstrate an actual injury to have standing under the CCPA. Specifically, a plaintiff must establish, among other things, "that the plaintiff suffered injury in fact to a legally protected interest" and "that the challenged practice caused the plaintiff's injury." *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (collecting cases) (citations omitted).

Here, the Complaint merely recites the Listing Provision's statutory elements and speculates about types of harm that *could* affect someone whose number is available on the Internet. But Plaintiff does not allege that any of those hypotheticals have occurred. According to Plaintiff, she (and the class she seeks to represent) is entitled to damages because her mobile number *could* be searched on Apollo's platform. If some party found it on "sites **like** Defendant's" (Compl. ¶ 33) (emphasis added), Plaintiff speculates, she might face "elevated risks of stalking, harassment, scams, identify theft, and unwanted telemarketing." *Id.* ¶ 51. Plaintiff's only other claimed injury is that Apollo's alleged conduct "deprives [her] of the real, quantifiable value of such data," but she alleges no details regarding this claimed loss of value—or explains how exploiting such value would be consistent with her supposed interest in keeping her mobile number private. *Id*. ¶¶ 32, 51. But the Complaint does not allege any injury Plaintiff actually "suffered," such as that Apollo distributed her number, anyone saw her number, or anyone contacted her (through telemarketing or otherwise) because of the alleged listing. This is insufficient. *See, e.g.*, *Nero v. Am. Fam. Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2012 WL 4478958, at *3 (D. Colo. Sept. 28, 2012) (dismissing CCPA claim where plaintiff only "conclusorily allege[d]" injury within the CCPA's meaning).

The Complaint also fails to satisfy the CCPA's requirement that plaintiffs show that the conduct at issue has a negative "impact on the public as consumers of the defendant's 'goods, services, or property.'" *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998) (citing Colo. Rev. Stat. § 6–1–105(a)); *see Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 5866303, at *6 (D. Colo. Nov. 19, 2012) (dismissing CCPA claim for failure to establish a significant impact on the public because "[t]here has to be some indication that there was a significant impact on the public"). Determining whether there is a "significant impact on the public" requires courts to consider "the number of consumers directly affected by the challenged practice" and "evidence that

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 919 (D. Colo. 2021), *aff'd sub nom. Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238 (10th Cir. 2022).

But Plaintiff pleads no facts indicating Apollo's conduct has harmed any other member of the public, only speculation that harm *could* occur. *See* Compl. ¶¶ 51–52 (postulating that privacy harms or diminution of value might occur). Accordingly, Plaintiff's allegations are insufficient to satisfy Colorado's statutory standing requirements.

**II.      Plaintiff fails to state a claim under the Listing Provision.**

Even if this Court finds Plaintiff has standing—and she does not—she has not pleaded a violation of the PTFA's Listing Provision. The Listing Provision requires Plaintiff to allege that Apollo (1) "knowingly" (2) "lists" (3) a Colorado cellular telephone number, (4) assigned to a telephone she owns, (5) "in a directory," (6) "for a commercial purpose," (7) without "affirmative consent[] through written, oral, or electronic means," and (8) there is no "preexisting commercial relationship" between Apollo and Plaintiff. *See* Colo. Rev. Stat. § 6-1-304(4).

The Complaint recites the statutory language (in part) but offers no detail to substantiate it. *See Iqbal*, 556 U.S. at 678. First, Plaintiff pleads no facts showing that Apollo "knowingly lists" her mobile number. The PTFA does not define "knowingly," "listed," or "directory," nor has a court interpreted the meaning of those terms under the statute, so the terms' plain meaning applies. *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) ("[I]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning.") (cleaned up). In determining the plain meaning of language, courts "consult dictionary definitions." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007); *see also Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012) (same).

The plain meanings of "knowingly" and "list" don't support Plaintiff's attempt to extend the PTFA to her claims against Apollo, however. Colorado courts "[a]ffording 'knowingly' its 'plain and ordinary meaning'" generally interpret it to require actual knowledge. *Przekurat by & through Przekurat v. Torres*, 2018 CO 69, ¶ 15, 428 P.3d 512, 516 (collecting cases) (citations omitted)

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

(noting that in contrast, "[w]hen the General Assembly imposes a constructive knowledge requirement, it typically provides that a person 'should have known' of a particular thing"). In turn, dictionaries define "know" as "to be aware of the truth or factuality of"[4] and "[t]o regard as true beyond doubt."[5] But Plaintiff fails to allege any facts indicating that Apollo had any awareness her number was a *Colorado* mobile number, rather than an out-of-state mobile number or a number belonging to a resident of a state besides Colorado. Instead, she merely restates the elements of the Listing Provision by claiming "Plaintiff's cellular telephone number was listed by Defendant in its directory" and "Defendant knowingly lists Coloradans' cell phone numbers." Compl. ¶¶ 10, 25. But that's not the same thing. And if this Court finds that "knowingly" or "list" (or any other part of the statute) is ambiguous, it should certify the question to the Colorado Supreme Court rather than decide a "novel question of Colorado law." *Hamilton v. Amazon.com Servs. LLC*, 2024 WL 158760, at *1 (10th Cir. Jan. 12, 2024), *certified question answered*, 2024 CO 60, 555 P.3d 620 (certifying "novel question [of Colorado law] . . . to the Colorado Supreme Court"); *Curran v. Home Partner Holdings LLC*, No. 23-cv-01279-DDD-MDB, 2024 WL 1829266, at *1 (D. Colo. Mar. 20, 2024) (same).

Plaintiff similarly pleads no facts showing that Apollo "listed" Plaintiff's number in its B2B database. Dictionaries provide the following definitions of "to list": "[t]o enter in a list" (where "list" is defined as "[a] series of names, words, or other items written, printed, or imagined one after the other")[6] and "to have or show a list of" (where "list" is defined as "a simple series of words or numerals").[7] As the Complaint's screenshots show, Apollo does not "list" business professionals' phone numbers because phone numbers are not shown in a "simple series" or a "series" of items "listed one after the other." As the Complaint makes clear, there is no singular "list" for phone

---

[4] *Know*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/know (last accessed Nov. 5, 2025).
[5] *Know*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=know (last accessed Nov. 5, 2025).
[6] *List*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=list (last accessed Nov. 5, 2025).
[7] *List*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/list (last accessed Nov. 5, 2025).

7

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

numbers on Apollo's database. Rather, a user must maneuver through various steps and screens to identify a business professional's profile before the user may initiate a request for Apollo to query its database for the individual's number. Specifically, a user must "search[] for individuals using filters," before the user may view "search results featuring individuals matching the selected parameters," "click an individual's name" and click "Access Mobile" or, once a user reaches an individual's profile, the user may add the individual to the user's "contacts list" before the user may query Apollo's database for the number in question. Compl. ¶¶ 19–23. Similarly, "directory" means "an alphabetical or classified list (as of names and addresses)"[8] or "[a] book containing an alphabetical or classified listing of names, addresses, and other data, such as telephone numbers, of specific persons, groups, or firms."[9] The Listing Provision's plain terms contemplate something much more like a traditional telephone book (even if analogized to the Internet)—not a search tool with layers of affirmative steps a user must take to (1) request Apollo query its database for a phone number and then (2) reveal only that number. It is unclear whether her number should be considered "listed" unless someone *actually viewed* the number—although Plaintiff doesn't allege anyone did.

Moreover, Plaintiff offers no facts to support her assertion that "Defendant never requested—and Plaintiff never provided—affirmative consent, through written, oral, or electronic means to such listing." Compl. ¶ 10.[10] Plaintiff may not rely on these "formulaic recitation[s] of the elements of a cause of action" without *any* specific factual pleading in support. *Twombly*, 550 U.S. at 555; *Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169, 1172 (N.D. Cal. 2019).

---

[8] *List*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/directory (last accessed Nov. 5, 2025).

[9] *Directory*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=directory&submit.x=34&submit.y=10 (last accessed Nov. 12, 2025).

[10] Indeed, Plaintiff's claims are undercut by her own public posting of a phone number, under her name, on Facebook in January 2023 (nearly two years prior to filing this action) under her name in a post soliciting the public to shop at a location where she was a vendor. *See* https://www.facebook.com/photo/?fbid=10219131706517134&set=pcb.10219131710317229 (last visited Nov. 5, 2025). *See* Declaration of Michael Bleicher ("Bleicher Decl.") ¶ 3, Ex. B. The Court can take judicial notice that this page and its contents exist, as discussed in Apollo's concurrently-submitted Request for Judicial Notice. *See* RJN at 1.

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

**III.    Plaintiff is barred from seeking class relief for violations of the PTFA.**

Even if Plaintiff could establish standing and allege a claim under the PTFA (which she cannot), the PTFA bars the statutory damages she seeks on behalf of the class. *See* Compl. at 14. When the Colorado legislature adopted the Listing Provision, it also amended the PTFA (and by extension, the CCPA) to permit recovery of statutory damages for a violation of the Listing Provision on an *individual* basis. *See* Colo. Rev. Stat. § 6-1-305(1)(c) ("A person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action . . . for . . . a penalty in the amount of at least three hundred dollars and not more than five hundred dollars. . ."). The provision does not provide for class relief. The CCPA also permitted statutory damages on an individual basis when the legislature passed Section 6-1-305(1)(c). *See* Colo. Rev. Stat. § 6-1-113(2)(a) ("Except in a class action . . . and notwithstanding any other law[,]" any person "in a private civil action" may recover the greater of "actual damages").[11]

The Colorado legislature amended the CCPA again in 2022 to authorize actual damages under the CCPA but did not authorize statutory damages for class relief. *See* Colo. Rev. Stat. § 6-1-113(2.9) ("In a case certified as a class action, a successful plaintiff may recover actual damages[.]"). The Colorado legislature's repeated decision not to amend the PTFA to provide for class action statutory damages evinces a clear legislative intent to cabin statutory damages to the $300-$500 available in individual actions.

This Court has repudiated attempts by plaintiffs to obtain class-wide statutory damages under the CCPA. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014

---

[11] Applying these restrictions in federal litigation is consistent with the Supreme Court's holding in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *Shady Grove* concerned a state law that barred *any* claim for statutory damages from being litigated as a class action, which the Supreme Court held conflicted with Federal Rule of Civil Procedure 23's general provision that a plaintiff may bring a class action regardless of what state law they are suing under. *See id.* at 399-400. Here, though, the CCPA does not purport to bar *any* class action for statutory damages. Instead, it limits one type of relief available to a potential class. Indeed, trying to extend *Shady Grove*'s holding to permit a putative class action for statutory damages in this context would impermissibly allow Congress to rewrite the individual state statutes' damages provisions, such that plaintiffs could circumvent a state legislature's express intent with regard to what types of relief are available merely by suing in federal court.

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

WL 1048710, at *10 (N.D. Cal. Mar. 14, 2014) (dismissing the plaintiff's claim for statutory damages in a class action because "the CCPA creates no statutory liability for a defendant in a private class action"). Courts in the Tenth Circuit have also found the CCPA does not permit actions for statutory damages on a class basis. *See, e.g., Pearson v. Geico Cas. Co.*, No. 17-CV-02116-CMA-MEH, 2018 WL 2096348, at *9 (D. Colo. May 7, 2018) ("Two judges in this District and two courts in the Tenth Circuit interpreting the CCPA have found that the [CCPA] . . . 'creates no statutory liability for a defendant in a private class action.'"); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2015 WL 4036319, at *6 (D. Colo. July 1, 2015) ("[D]amages are barred in class actions under the CCPA."). Accordingly, Plaintiff cannot obtain statutory damages on a class-wide basis and those claims should be dismissed.

**IV.     The Listing Provision is unconstitutional.**

Further, even if Plaintiff had adequately alleged a PTFA claim, which she has not, the Listing Provision is constitutionally infirm. It is impermissibly vague as to how entities must comply with the statute; it violates the DCC in its attempt to regulate the "listing" of any cell phone number that could be construed as a Colorado cell phone number; and it contravenes the First Amendment by failing strict scrutiny through its sweeping regulation of content-based speech.

**A.     The Listing Provision is unconstitutionally vague.**

"[L]aws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As such, due process requires "that a statute must clearly delineate the conduct it proscribes." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998). "This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *Fox Television Stations*, 567 U.S. at 253.

The PTFA does not specify how entities can determine whether a phone number is a Colorado mobile number subject to the statute. There are several methods by which entities could identify a number as "mobile" and tie it to a resident of a particular state. Each of those, though, could yield substantially different outcomes. For example, Plaintiff might argue that Apollo must distinguish Colorado mobile numbers from non-Colorado mobile numbers by

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

confirming if numbers contain Colorado area codes. But an area code is not always an accurate indication of one's state of residence because individuals often keep their phone number even when they no longer reside in the location assigned to the area code. And this is likely to be even more true for cellular phones that, by definition, do not remain in a single location and can travel with consumers when they move out of Colorado. Alternatively, Plaintiff could argue that Apollo must use location data as a proxy for determining whether a phone number is subject to the statute, if such location data even exists; however, even location data, if any, may not demonstrate whether an individual is a Colorado *resident* or just visiting.

Because the statute provides insufficient clarity, entities like Apollo have no way to reasonably understand how to comply. *See Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (holding a statute aimed at regulating loitering "unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a[n] [entity] must do in order to satisfy the statute"); *Lair v. Murry*, 846 F. Supp. 2d 1116, 1122 (D. Mont. 2012) (enjoining enforcement of a vote-reporting requirement as unconstitutionally vague, in part because "persons of ordinary intelligence do not have a reasonable opportunity to know what is prohibited" by the law) (cleaned up). Accordingly, it is unconstitutionally vague.

**B.      The Listing Provision violates the Dormant Commerce Clause ("DCC").**

Because complying with the Listing Provision *in* Colorado would impair commercial activity *outside* Colorado, the Provision also violates the DCC. Through the DCC, the Constitution prohibits states from discriminating against or placing undue burdens on out-of-state commerce. *See South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018). The DCC bars state legislation that is "clearly excessive in relation to the putative local benefits" even "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental[.]" *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Although the Supreme Court has recently held that state laws that leave businesses with a clear choice between complying with that state's law nationwide or "withdraw[ing] from that State's market" do not violate the DCC, the Listing Provision doesn't give businesses such a choice. *Nat'l Pork Producers Council v. Ross* ("*Ross*"), 598 U.S. 356, 384–85 (2023).

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

The PTFA does not satisfy even *Ross'* lenient approach to determining a DCC violation, because it provides no way for businesses like Apollo to withdraw from only Colorado's market. As discussed in Section IV(A), above, if the PTFA applies, Apollo must comply by removing all Colorado mobile numbers from its offerings. But doing so is not as simple as it sounds. If Apollo removed all phone numbers with Colorado area codes, it couldn't be sure that it had removed all numbers of Colorado residents with out-of-state area codes; at the same time, it could be removing numbers of people who used to, but no longer, live in Colorado but have kept a Colorado number. If it removed phone numbers based on undetermined location information, it would be relying on an unreliable proxy for actual *residence* in Colorado. Should Apollo take the widest approach and remove numbers based on *any* possible connection to Colorado, it would remove many numbers with owners who do not actually live in Colorado. As a result, B2B commerce in the rest of the United States would be unduly burdened: there is no federal analogue to the PTFA, and most states don't have a similar statute either. Because there is no way to comply with or enforce the PTFA that doesn't impede nationwide B2B commerce, it violates the DCC.

### C.      The Listing Provision violates the First Amendment on its face.

The Listing Provision is also an unconstitutional content-based restriction against protected commercial speech that fails strict scrutiny under the First Amendment. It is neither narrowly tailored nor the least restrictive means of achieving Colorado's interests and therefore fails a facial challenge. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).[12]

#### 1.      Content-based speech restrictions are constitutionally suspect.

"[A] law is content based on its face if it applies to particular speech because of the topic discussed or the idea or message expressed." *TikTok Inc. v. Garland*, 604 U.S. 56, 70 (2025) (internal citations omitted). Content-based restrictions are subject to strict scrutiny and are presumptively unconstitutional. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164–65 (2015) (because regulation was a "content-based regulation of speech" on its face, the Court had "no need to consider the government's justifications or purposes for enacting the Code to determine whether it

---

[12] Apollo reserves the right to later bring an as-applied challenge under the First Amendment.

is subject to strict scrutiny"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020) ("In the majority of cases, we apply the most exacting form of review—strict scrutiny—to determine the validity of a content-based restriction on speech.").

Courts nationwide consistently hold that laws restricting disclosure of contact information like telephone numbers or addresses are content-based. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) (ruling that Vermont's law restricting disclosure of contact information is content based because it "disfavors marketing, that is, speech with a particular content"); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012–13 (E.D. Cal. 2017) (holding that statute allowing state officials to demand takedown of their home address or phone number was "content-based on its face"); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) ("Neither party disputes that the Ordinance is a content-based restriction—it regulates only yellow pages directories."); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (recognizing that prohibition of disclosure of home addresses and telephone numbers is content based restriction on speech); *IMDb.com*, 962 F.3d at 1120 (holding that statute "[o]n its face... restricts speech because of its content" because "[i]t prohibits the dissemination of one type of speech: date of birth or age information") (cleaned up).[13]

### 2.    The Listing Provision is a content-based restriction on protected speech.

The Listing Provision is content-based because it regulates speech based on whether it includes mobile phone information published "for a commercial purpose." Colo. Rev. Stat. § 6-1-304. This makes it a "paradigmatic example of content-based discrimination" because it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter." *Reed*, 576 U.S. at 169 (town sign regulations gave ideological messages "more

---

[13] *See also Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1247, 1249–50 (N.D. Fla. 2010) (holding that state law prohibiting malicious publication of "the residence address or telephone number of any law enforcement officer" was "clearly content-based, as it restricts speech based [on] its subject"); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003) (holding that a statute barring publication of address, phone number, birthdate, or social security number of law enforcement, corrections-officer related, or court-related personnel was content-based "on its face").

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

favorable treatment than messages concerning a political candidate," although it did not give preference to one type of ideology or political candidate).

IMDB is instructive. There, in attempting to remedy age discrimination in the entertainment industry, the California legislature passed a statute requiring "commercial online entertainment employment service provider[s]" to remove the date of birth and age information of subscribers from the subscriber's paid profile or "any companion Internet Web sites under its control" upon subscriber request. See IMDB.com, 962 F.3d at 1117–18 (analyzing Cal. Civ. Code § 1798.83.5). Applying strict scrutiny, Ninth Circuit held that while reducing age discrimination is a compelling government interest, the statute did not use the "least restrictive means to accomplish that goal and [was not] narrowly tailored" because it "restrict[ed] only websites like [IMDb.com] while leaving unrestricted every other avenue through which age information might be disseminated." IMDB.com, 962 F.3d at 1126. Similarly, the Listing Provision allows any entity to publish mobile numbers for a supposedly "non-commercial" purpose but places no restrictions on publishing other types of personal contact information, such as street address or email address, for a commercial purpose.

### 3.      The Listing Provision does not target commercial speech.

Further, while the Listing Provision addresses "listings" made "for a commercial purpose," the lower standard of intermediate scrutiny that applies to laws targeting commercial speech does not apply here. Whether speech is "commercial" depends on its content, not its purpose. Courts in the Ninth Circuit look to "three characteristics which, in combination, support a conclusion that the document at issue constitute[s] commercial speech, including (i) their advertising format, (ii) their reference to a specific product, and (iii) the underlying economic motive of the speaker." Dex Media W., 696 F.3d at 958 (internal citations omitted) (cleaned up).

Courts evaluating similar laws regulating publication of personal information have held that those laws did not regulate commercial speech. For example, in Jackson v. Whitepages, Inc., the court considered a law that prohibited "disclosing, redisclosing or otherwise making available the home address or unpublished home or personal telephone number" of certain public officials. No. 24-cv-102, 2025 WL 2407201, at *1 (N.D.W. Va Aug. 19, 2025) (cleaned up), appeal filed sub nom. Michael Jackson v. Whitepages, Inc., No. 25-2122 (4th Cir. Sept. 19, 2025). It rejected the

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

plaintiff's arguments that disclosure of addresses and phone numbers on "people search" websites are commercial speech because they are "driven by an economic motivation," or are comparable to advertisements because companies "will post the home addresses and phone numbers of persons to draw customers to their sites, who in turn will then see advertisements for other goods and services." *Id*. at *10. Further, as the Complaint explains, Apollo "provides an online business-to-business" service—i.e., it offers contact information about *businesses*—so the First Amendment interest is greater because such information is of greater public concern than the purely personal information at issue in cases like *Jackson*. Compl. ¶ 16; *see Jackson*, 2025 WL 2407201, at *4 (law prohibiting "people search" or "people finder" websites from disclosing individuals' personal contact information was unconstitutional).

Second, to the extent a listing in a business intelligence search platform is a "product," the listing does not "refer" to a product; it *is* the product. *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) (a greeting card is not commercial speech because it "is not advertising the product; it *is* the product") (emphasis in original). In other words, the speech here is the contact information—not an advertisement for the service offering the contact information. And the contact information itself is not "commercial" just because it is offered for a price.

Finally, the Listing Provision's reference to a "commercial purpose" does not make the underlying publication "commercial." Economic motivation alone is "clearly . . . insufficient" to transform fully protected speech into commercial speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983); *U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1207 (D. Colo. 2001); *see also Dex Media W.*, 696 F.3d at 960 (same); *Jackson*, 2025 WL 2407201, at *10 (same). "[T]he degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988).

The Listing Provision is no different because the communication that the statute regulates is factual, not commercial, and Apollo's business model does not change that analysis.

**4.      Section 304(4)(a)(I) fails strict scrutiny.**

As a content-based restriction targeting noncommercial speech, the Listing Provision is "presumptively unconstitutional," and it cannot overcome that high bar because it is underinclusive and a heavy-handed solution where less restrictive means are available. *Reed*, 576 U.S. at 163; *see Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.") (internal quotation omitted).

**i. The PTFA does not further a compelling government interest.**

The PTFA's preamble cites two interests: protecting "the integrity of the telemarketing industry" and preventing "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. But nothing in the Complaint or in caselaw establishes that these are "compelling government interests" legitimizing a content-based restriction. *Reed*, 576 U.S. at 171.

Courts have never recognized the "integrity of the telemarketing industry" as a compelling interest, and it should be given minimal, if any, weight here. Preventing fraudulent and deceptive telemarketing may be Colorado's purported interest, but "recit[ing] the Government's compelling interests" is not enough. *United States v. Alvarez*, 567 U.S. 709, 725–26 (2012) (government must still carry its "heavy burden when it seeks to regulate protected speech" even if the interest is compelling). Yet the statute does not provide any more substantive justification for how it targets protected speech. Even if that interest has some merit, which Apollo does not concede, the PTFA still fails scrutiny because it is not narrowly tailored and is more restrictive than necessary.

**ii. The Listing Provision is not narrowly tailored.**

Next, the Listing Provision is not narrowly tailored because it prohibits only some ways of publicizing mobile phone numbers, even though it purports to address the harm from publicizing mobile phone numbers in general. A law is not narrowly tailored if it is "seriously underinclusive" or "overinclusive." *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011). A law is underinclusive if it places "strict limits" on some activities, when others "create the same problem." *Reed*, 576 U.S. at 172. If a law is "underinclusive," this may show that it "does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). Indeed, if a law

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

regulates one category of speech, but allows others to go untouched, this alone can render it unconstitutional. *See Reed*, 576 U.S. at 172; *Ent. Merchs. Ass'n*, 564 U.S. at 802.

The Listing Provision is critically underinclusive because it targets one channel of speech while leaving untouched other means of distributing the same information: Colorado allows personal telephone numbers to be published in several other ways. The state government makes **any voter's phone number publicly accessible** upon request (*including* cell phone numbers) unless marked confidential.[14] Colorado disclosure reports contain political candidates' phone numbers.[15] And until earlier this year, Colorado also previously maintained an employee directory which included state employees' phone numbers.[16] And the Colorado Supreme Court maintains a directory of all attorneys barred within the state, including their phone numbers.[17]

Rather than limit disclosure of business or personal phone numbers in general, the Listing Provision applies only to speakers with a nebulously-defined "commercial purpose," however that might be interpreted. And in addition to governmental entities, the "commercial purpose" limitation (Colo. Rev. Stat. § 6-1-304(4)(a)(I)) would seemingly exclude religious, political, and educational organizations, and others who might share phone numbers for various purposes—even if raising or making money is *part* of the reason for sharing those numbers. The law also exempts businesses that do not "list"—however that is to be interpreted—cell phone numbers in "directories," even if their publication of those numbers has a commercial purpose. And, strangely, the law also allows listing numbers if there is an amorphous "pre-existing business relationship" between the parties. *Id.*, subs. (4)(b).

---

[14] *Public Voter Data and Information Requests FAQs*, Colo. Sec'y of State, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html (last accessed Nov. 17, 2025).

[15] *See Candidate Search*, Colo. Sec'y of State, https://tracer.sos.colorado.gov/PublicSite/SearchPages/CandidateSearch.aspx (last accessed Nov. 17, 2025).

[16] *See* Bleicher Decl., ¶2, Ex. A. Indeed, Colorado maintained this directory until other entities began moving to dismiss nearly identical PTFA lawsuits brought by Plaintiff's counsel.

[17] *Attorney / LLP Search & Disciplinary History*, Off. of Att'y Regul. Couns., https://www.coloradolegalregulation.com/attorney-search/ (last accessed Nov. 17, 2025).

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO

Underinclusive laws like this are regularly struck down or enjoined as unconstitutional. *See, e.g.*, *The Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (Florida law prohibiting publishing the name of victims of sexual offenses was facially underinclusive "[w]ithout more careful and inclusive precautions against alternative forms of dissemination"); *Ostergren v. Cuccinelli*, 615 F.3d 263, 286 (4th Cir. 2010) (Virginia law prohibiting dissemination of social security numbers would not be narrowly tailored "when Virginia currently makes those same records available through secure remote access without having redacted SSNs"); *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023) (Pennsylvania District Attorney prosecuting defendant for publishing information contained in state child abuse database did not explain alternatives of acquiring protective order or authorizing civil penalties); *cf. Sheehan*, 272 F. Supp. 2d at 1147–48 ("[T]he Court may not rewrite a statute or insert missing terms to conform it to constitutional standards.").

### iii. The PTFA does not use the least restrictive means available.

Finally, the PTFA does not pass muster because less restrictive alternatives could protect Coloradans from fraud or harassment stemming from their cell phone numbers' availability. When legislation restricts substantial amounts of speech, strict scrutiny requires that it do so by the least restrictive means among all effective alternatives. *Ashcroft v. ACLU* ("*Ashcroft II*"), 542 U.S. 656, 666 (2004); *see Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Playboy Ent. Grp.*, 529 U.S. at 813 ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). The state must bear the burden of proving that "proposed less restrictive alternatives are less effective." *Ashcroft II*, 542 U.S. at 666. This burden cannot be met with surface-level assertions. *See Alvarez*, 567 U.S. at 729; *see also Playboy Ent. Grp.*, 529 U.S. at 817–24; *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019).

Here, several less restrictive alternatives exist. Statutes such as the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, and various state-level telemarketing laws offer additional avenues to address these concerns without impinging upon protected speech. Indeed, the PTFA's own provisions provide additional examples of less restrictive means of protecting consumers from fraud or harassment: registration of commercial telephone sellers (Colo. Rev. Stat. § 6-1-303), the ability to cancel or refund purchases (Colo. Rev. Stat. § 6-1-304(1)(b)–(c)), and

18

prohibitions on misrepresentations during telephone calls (Colo. Rev. Stat. § 6-1-304(1)(e)–(h)). In light of these regulations aimed at curbing telemarketing fraud and deception, Section 304(4)(a)(I)'s outright ban on listing cell phone numbers in a directory for commercial purposes does not represent the least restrictive means of advancing the stated governmental interest.

Additionally, there are alternative ways to accomplish the PTFA's intended purpose without similarly impeding protected speech. For example, cell phone numbers that the government or owners previously disclosed publicly could be excluded from coverage. Colorado could enact stricter penalties on acts of fraud or harassment relating to use of a mobile phone number (possibly expanding liability to include the person or entity who supplied the phone number). And lesser penalties, such as injunctive relief rather than money damages, could combat the harms the PTFA seeks to combat while reducing the chilling effect that the PTFA's significant financial penalties have on lawful speech.

Given its constitutionally suspect goals, limited applicability to only certain speakers, and the availability of less restrictive alternatives, the Listing Provision cannot survive strict scrutiny.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

Dated: November 25, 2025

Respectfully submitted,

ZWILLGEN PLLC

By:  /s/ Michael Bleicher
Michael Bleicher (SBN 313892)
Michael.bleicher@zwillgen.com

*Attorney for Defendant*
*Zenleads, Inc.*

19

DEFENDANT'S AMENDED MOTION TO DISMISS; CASE NO. 25-cv-04970-WHO