**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*Pro Hac Vice*)
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE COCHRANE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZENLEADS, INC., D/B/A APOLLO.IO,<br><br>Defendant. | Case No. 3:25-cv-04970-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:  January 7, 2026<br>Time:  2:00 p.m.<br>Courtroom:  2-17th Floor<br>Judge:  Hon. William H. Orrick |

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.  PLAINTIFF HAS STATUTORY STANDING ........................................................2

II.  PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES .......................5

III.  PLAINTIFF STATES A CLAIM UNDER THE COMMERCIAL LISTING
PROVISION ...........................................................................................................6

    A.  Defendant "Knowingly" Lists Coloradoans' Cellular Numbers ..............................6

    B.  Apollo.io Is A "Directory" Which "Lists" Cellular Numbers ....................................6

IV.  DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL ...........................................8

    A.  The Challenged Conduct Is Not "Speech" ..................................................................8

    B.  The Commercial Listing Provision Is Not Content-Based ........................................9

    C.  Statutes Recognizing Privacy Torts Are Not Subject To Strict
Scrutiny.......................................................................................................................11

    D.  The Commercial Listing Provision Regulates Solely Commercial
Speech, Thus Strict Scrutiny Does Not Apply ..........................................................13

    E.  Defendant Has Waived The Argument That The Commercial Listing
Provision Does Not Survive Intermediate Scrutiny ..................................................17

    F.  Even If Defendant Were Correct That Strict Scrutiny Applies, The
Commercial Listing Provision Survives....................................................................18

        1.  The Commercial Listing Provision Serves A Compelling
State Interest ...............................................................................................18

        2.  The Commercial Listing Provision Is Narrowly Tailored...........................19

        3.  Less Restrictive Means Are Less Effective.................................................21

    G.  The Listing Provision Is Not Unconstitutionally Vague .........................................22

    H.  The Listing Provision Does Not Violate The Dormant Commerce
Clause ........................................................................................................................23

CONCLUSION ..................................................................................................................25

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Ainscough v. Owens*,
90 P.3d 851 (Colo. 2004) ........................................................................................ 2, 3

*Am. Comp. Ins. Co. v. McBride*,
107 P.3d 973 (Colo. App. 2004)................................................................................ 3

*Ariix, LLC v. NutriSearch Corporation*,
985 F.3d 1107 (9th Cir. 2021) ................................................................................. 15

*Atlas Biologicals, Inc. v. Kutrubes*,
50 F.4th 1307 (10th Cir. 2022) ................................................................................. 3

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ..................................................................... 15

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ......................................................... 15, 19, 22

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..................................................................... 19

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60(1983) ................................................................................................... 15

*Bonanno v. Quizno's Franchise Co., LLC*,
2008 WL 638367 (D. Colo. Mar. 5, 2008)................................................................ 5

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010) ................................................................... 11

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .................................................... 16, 17

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023).................................................................... 3

*Burson v. Freeman*,
504 U.S. 191 (1992) ................................................................................................ 13

*Camacho v. Control Grp. Media Co., LLC*,
2022 WL 3093306 (S.D. Cal. July 18, 2022)............................................... 3, 4, 19, 24

*Camacho v. PeopleConnect, Inc*,
2022 WL 22913841 (S.D. Cal. July 18, 2022).......................................................... 19

*Carey v. Brown*,
447 U.S. 455 (1980) ................................................................................................................. 18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ............................................................................................. 14, 16, 17, 18

*Christoph v. Colo. Commc'ns Corp.*,
946 P.2d 519 (Colo. App. 1997)............................................................................................. 6

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
114 F. Supp. 3d 952 (N.D. Cal. 2015)................................................................................... 4

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
596 U.S. 61 (2022) ...................................................................................................... 9, 10, 11

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288 (1984) ............................................................................................................... 8

*Colombo v. YouTube, LLC*,
679 F. Supp. 3d 940 (N.D. Cal. 2023)................................................................................. 25

*Cunha v. IntelliCheck, LLC*,
254 F. Supp. 3d 1124 (N.D. Cal. 2017)............................................................................... 23

*Data Priv. Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024)................................................................... 11, 12, 13, 21

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ............................................................................................... 11

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ....................................................................................................... 16, 17

*Envt'l Def. Fund v. Massey*,
986 F.2d 528 (D.C. Cir. 1993)............................................................................................. 24

*Ferguson v. Friendfinders, Inc.*,
94 Cal. App. 4th 1255 (1st Dist. 2002)................................................................................ 24

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995) ............................................................................................................. 18

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
2013 WL 5448078 (D. Colo. Sept. 27, 2013) ...................................................................... 4

*Gallion v. Charter Commc'ns Inc.*,
287 F. Supp. 3d 920 (C.D. Cal. 2018).................................................................................. 19

*Golec v. Boring*,
2024 WL 5102044 (Colo. App. Dec. 12, 2024) .................................................................. 13

*Hall v. Walter*,
 969 P.2d 224 (Colo. 1998) ................................................................................................ 2, 4

*Healy v. Beer Institute, Inc.*,
 491 U.S. 324 (1989) ............................................................................................................ 25

*Hilton v. Hallmark Cards*,
 599 F.3d 894 (9th Cir. 2010) ............................................................................................. 14

*Holder v. Humanitarian L. Project*,
 561 U.S. 1 (2010) ............................................................................................................... 22

*Hoye v. City of Oakland*,
 653 F.3d 835 (9th Cir. 2011) ............................................................................................... 8

*Hunt v. City of L.A.*,
 638 F.3d 703 (9th Cir. 2011) ............................................................................................. 15

*IMDb.com Inc. v. Becerra*,
 962 F.3d 1111 (9th Cir. 2020) ...................................................................................... 10, 11

*In re Facebook Biometric Info. Priv. Litig.*,
 2018 WL 2197546 (N.D. Cal) ............................................................................................ 25

*In re Zynga Privacy Litigation*,
 750 F.3d 1098 (9th Cir. 2014) ............................................................................................. 9

*Individual Reference Servs. Grp., Inc. v. F.T.C.*,
 145 F. Supp. 2d 6 (D.D.C. 2001) ....................................................................................... 16

*Ivar v. Elk River Partners, LLC*,
 705 F. Supp. 2d 1220 (D. Colo. 2010) ............................................................................ 2, 3

*Jackson v. Whitepages*,
 2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025) .......................................................... 13, 14

*Joe Dickerson & Assocs., LLC v. Dittmar*,
 34 P.3d 995 (Colo. 2001) .................................................................................................... 12

*Kellman v. Spokeo, Inc.*,
 599 F. Supp. 3d 877 (N.D. Cal. 2022) .......................................................................... passim

*Kolebuck-Utz v. Whitepages Inc.*,
 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ...................................................... 14, 17, 19

*Lukis v. Whitepages Inc.*,
 542 F. Supp. 3d 831 (N.D. Ill. 2020) ............................................................................ 10, 17

*MaryCLE, LLC v. First Choice Internet, Inc.*,
 890 A.2d 818 (Md. Ct. Spec. App. 2006) ........................................................................... 24

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) ................................................................................. 18

*Monroy v. Shutterfly, Inc.*,
2017 WL 4099846 (N.D Ill. Sept. 15, 2017) ........................................................ 24

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356, (2023) ............................................................................................. 25

*Nelson v. United States*,
915 F.3d 1243 (10th Cir. 2019) ............................................................................... 6

*Nixon v. Administrator of Gen. Servs.*,
433 U.S. 425 (1977) .............................................................................................. 13

*One Creative Place, LLC v. Jet Ctr. Partners, LLC*,
259 P.3d 1287 (Colo. App. 2011) ............................................................................ 4

*Otter Prods., LLC v. Triplenet Pricing Inc.*,
572 F. Supp. 3d 1066 (D. Colo. 2021) .................................................................... 4

*People v. Martinez*,
534 P.3d 72 (2023) ................................................................................................ 16

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025) ............................................................................... 10

*Publius v. Boyer-Vine*,
237 F. Supp. 3d 997 (E.D. Cal. 2017) ................................................................... 11

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) ......................................................................................... 10, 11

*Reeves v. City of Fort Collins*,
170 P.3d 850 (Colo. App. 2007) .............................................................................. 3

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................................................................. 23

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
547 US. 47 (2006) ................................................................................................... 9

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ........................................................... 16, 17, 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................................ 6

*Sheehan v. Gregoire*,
272 F. Supp. 2d 1135 (W.D. Wash. 2003) ............................................................ 11

*Shekarchian v. Maxx Auto Recovery, Inc.*,
   487 P.3d 1026 (Colo. App. 2019)................................................................................... 5

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...................................................................................................... 10

*State v. Heckel*,
   24 P.3d 404 (Wash. 2001) ............................................................................................ 24

*Texas v. Johnson*,
   491 U.S. 397 (1989) ........................................................................................................ 9

*The Fla. Star v. B.J.F.*,
   491 U.S. 524 (1989) ................................................................................................. 12, 13

*Tonnessen v. Denver Pub. Co.*,
   5 P.3d 959 (Colo. App. 2000)....................................................................................... 12

*Trans Union Corp. v. Federal Trade Com.*,
   245 F.3d 809 (D.C. Cir. 2001).................................................................................. 16, 17

*Trans Union LLC v. Federal Trade Com.*,
   295 F.3d 42 (D.C. Cir. 2002) ........................................................................................ 16

*Troster v. Pennsylvania State Dept. of Corrections*,
   65 F.3d 1086 (3d. Cir. 1995) .......................................................................................... 9

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*,
   489 U.S. 749 ................................................................................................................. 20

*United States v. Rahimi*,
   602 U.S. 680 (2024) ........................................................................................................ 8

*Victory Processing, LLC v. Fox.*,
   937 F.3d 1218 (9th Cir. 2019) .................................................................................. 18, 19

*Vidal v. Elster*,
   602 U.S. 286 (2024) ...................................................................................................... 11

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ...................................................................................................... 23

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ........................................................................................................ 8

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) ...................................................................................................... 20

*Wimberly v. Ettenberg*,
   570 P.2d 535 (1977) ........................................................................................................ 2

*Y.Y.G.M. SA v. Redbubble, Inc.*,
 75 F.4th 995 (9th Cir. 2023) ................................................................................................. 22

**STATUTES**

18 U.S.C. § 2710 ................................................................................................................... 19

47 U.S.C. § 227 ..................................................................................................................... 19

Colo. Rev. Stat. § 6-1-113 ...................................................................................................... 5

Colo. Rev. Stat. § 6-1-301 .............................................................................................. 1, 9, 19

Colo. Rev. Stat. § 6-1-304 ............................................................................................... passim

Colo. Rev. Stat. § 6-1-305 ..................................................................................................... 2, 5

**RULES**

Fed. R. Civ. P. 23 .................................................................................................................... 6

**OTHER AUTHORITIES**

HB05-1288 ............................................................................................................................... 1

**INTRODUCTION**

On May 27, 2005, the Colorado Prevention of Telemarketing Fraud Act ("CO PTFA" or "PTFA") was amended to prohibit commercially listing a cell phone number in a directory, without permission.  *See* Plaintiff's Amended Complaint (ECF No. 1-1) ("Compl.") ¶ 1 (citations omitted). This prohibition is designed to protect privacy. As former State Representative Mark Cloer, a prime sponsor of HB05-1288, stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important." *See id.* ¶ 2 (citations omitted).  The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information.  This aligns with the CO PTFA's overall purpose.  *See* Colo. Rev. Stat. § 6-1-301 (noting the "special risks" and "potential for abuse" inherent in "the widespread practice of fraudulent and deceptive commercial telephone solicitation.").  Colo. Rev. Stat. § 6-1-304(4)(a)(I) (the "Commercial Listing Provision") provides, in pertinent part:

> (a) [A] person commits an unlawful telemarketing practice if the person knowingly:
>> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

Despite this abundantly clear proscription, Defendant ZenLeads, Inc., doing business as Apollo.io, ("Apollo") has listed the cellular telephone numbers of thousands of Colorado residents in their for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.  Compl. ¶ 6.  Indeed, Defendant does not request consent whatsoever to list class members' cellular telephone numbers, affirmative or otherwise.  *Id.* ¶ 7.  And it cannot be debated that Defendant's listing of cell phone numbers is done for a commercial purpose under the PTFA. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to their customers and subscribers. *See id.* ¶ 28.

Plaintiff Janelle Cochrane's ("Plaintiff") cellular telephone number was listed by Defendant Defendant in its directory, available at apollo.io.  Compl. ¶ 10.  Defendant never requested – and

Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listings. *Id.* In fact, Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of her personal information until shortly before filing suit. *Id.* Plaintiff brought this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users like herself and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c). *Id.* ¶ 9.

Defendant has moved this Court to dismiss. (ECF No. 33) ("MTD"). First, Defendant argues that Plaintiff lacks statutory standing. But under Colorado Supreme Court precedent, deprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact**.** Furthermore, the injuries suffered by Plaintiff track traditional common law injuries long recognized as concrete not only in Colorado, but across the country for Article III purposes. Defendant next argues that the Complaint fails to state a claim under the CO PTFA. But Defendant's arguments ignore the plain language of the CO PTFA in favor of fantastical interpretations. And contrary to Defendant's assertions, statutory damages are plainly available on a classwide basis under the CO PTFA.

Finally, Defendant argues that the Commercial Listing Provision of the CO PTFA is facially unconstitutional. However, Defendant's constitutionality challenge applies the wrong standards and does not come close to meeting the heavy burdens imposed for facial constitutional challenges. Defendant's motion should be denied in its entirety.

## ARGUMENT

## I.    PLAINTIFF HAS STATUTORY STANDING

Defendant argues that "Plaintiff fails to allege actual injury as required by the Colorado Consumer Protection Act[.]" MTD at 4. This is wrong. "[F]or a private cause of action under the CCPA, the plaintiff must meet the *Wimberly* standing requirements by demonstrating (a) injury in fact; (b) to a legally protected interest." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (citing *Wimberly v. Ettenberg*, 570 P.2d 535 (1977)); *see also Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241 (D. Colo. 2010). Here, Plaintiff states a claim under the CO PTFA, *see infra*, so the second prong is satisfied. *See, e.g., Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004) (second

prong asks "whether the plaintiff has a claim for relief under … a statute"); *Reeves v. City of Fort Collins*, 170 P.3d 850, 851 (Colo. App. 2007). Thus, Plaintiff focuses on the first prong.

"The *Wimberly* test provides a relatively broad definition of standing that has traditionally been relatively easy to satisfy." *Ivar*, 705 F. Supp. 2d at1241 (cleaned up). "[U]nlike federal standing requirements, [] Colorado … does not require an injury that is both concrete and particularized, on the one hand and actual or imminent, not conjectural or hypothetical on the other." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1327 (10th Cir. 2022) (cleaned up). And "[i]njury in fact may be proved by showing that the action complained of has caused or has threatened to cause injury." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 976 (Colo. App. 2004) (citation omitted).

Critically, "**[d]eprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact.**" *Ainscough*, 90 P.3d at 856 (emphasis added). Here, Plaintiff suffered the deprivation of her rights under the CO PTFA; her cell phone number was listed by Apollo in its directory, for a commercial purpose, and without Plaintiff's consent. Compl. ¶ 9. Thus, Plaintiff suffered an injury in fact, because she was deprived of her legal right to control who lists her cellular telephone number in a directory for commercial purposes. *Id.*

Indeed, even under Article III, Plaintiff suffered injury. "[D]isclosure of private information is a type of intangible harm traditionally recognized to be appropriate for judicial resolution." *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022) (Orrick, J.) (cleaned up). And "violation of a statute that protects a substantive right to privacy does result in a concrete harm." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) (cleaned up).

Defendant contends "Plaintiff's [] other claimed injury is that Apollo's alleged conduct deprives [her] of the real, quantifiable value of such data, but she alleges no details regarding this claimed loss of value[.]" MTD at 5 (cleaned up). But, "as the Ninth Circuit [has] provided, the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless. … [I]f a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small. … [This can] establish[] common law injury[.]"). *Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) (cleaned up);

*see also id.* ("use of [plaintiff's] likeness to advertise is enough show an inference of injury via economic value.") (collecting cases); *see also Kellman*, 599 F. Supp. 3d at 890 ("[T]he injury for Article III purposes (one of four here) is simply loss of commercial use.").

Defendant argues "[t]he Complaint also fails to satisfy the CCPA's requirement … [of] negative impact on the public[.]" MTD at 5 (cleaned up). Again, Apollo misses the mark.[1] "When analyzing whether a trade practice has a significant public impact, courts consider (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Otter Prods., LLC v. Triplenet Pricing Inc.*, 572 F. Supp. 3d 1066, 1078 (D. Colo. 2021) (cleaned up). No single factor is determinative; the "analysis [is] more akin to a balancing test than a checklist." *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011).

<u>First</u>, Plaintiff alleges that the proposed class includes "thousands of individuals" consisting of "all Colorado residents whose cell phone numbers were listed on apollo.io." Complaint ¶¶ 36, 38; ¶¶ 6, 11. And as a "data broker," Defendant is in the business of "compil[ing] and organiz[ing] … data[]" in bulk. *Id.* ¶¶ 15-16; ¶¶ 18-25. Thus, there is sufficient numerosity. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *5 (D. Colo. Sept. 27, 2013) ("Plaintiffs have adequately alleged a significant public impact[.] ... The FAC alleges that many consumers, not just Friedman and Nellis, were affected").

<u>Second</u>, Plaintiff alleges that "Defendant never requests nor receives Coloradans' affirmative consent, through written, oral, or electronic means, to such listing[.] … Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence." Compl. ¶ 50 (cleaned up); *see also* ¶¶ 6, 10, 40. Thus, Plaintiff and her fellow Class Members had no bargaining power whatsoever. Thus, the second factor favors Plaintiff.

---

[1] Defendant does not raise, and therefore waives, any argument as to the other three elements of the standing inquiry set out by *Hall*, 969 P.2d at 235. *See, e.g.*, *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 114 F. Supp. 3d 952, 973 (N.D. Cal. 2015) ("The Court does not consider arguments raised for the first time in a reply brief.").

*Bonanno v. Quizno's Franchise Co., LLC*, 2008 WL 638367, at \*5 (D. Colo. Mar. 5, 2008) (factor satisfied where "Plaintiffs allege disparate bargaining power and sophistication … [as] [p]laintiffs had no opportunity to negotiate the terms"). (cleaned up).

Third, Plaintiff alleges that the challenged practice has previously impacted other consumers and has significant potential to do so in the future. Defendant violated Plaintiff's and Class Members' CO PTFA rights, privacy, and economic interests through its online directory, apollo.io. *See supra*. As recognized by, *inter alia*, the Federal Trade Commission, this actively exposes Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing. Complaint ¶¶ 8, 29-35, 51. Therefore, the third factor is satisfied. *See Bonanno*, 2008 WL 638367, at \*5 (D. Colo. Mar. 5, 2008) ("Finally, Plaintiffs clearly allege that the challenged conduct has impacted and will continue to impact large numbers of consumers[.] … I find that this is not an action designed to address a purely private wrong.").

## II.    PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES

Defendant next argues that the PTFA only provides for individual relief, not class relief. MTD at 9. Defendant is wrong, for three reasons. First, and most critically, the "penalties" section of the PTFA expressly guarantees the remedies therein "**[i]n addition** to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113." Colo. Rev. Stat. § 6-1-305 (emphasis added). Thus, even if the putative class could not recover statutory damages under Colo. Rev. Stat. § 6-1-113, they can still recover them under Colo. Rev. Stat. § 6-1-305, which contains no language prohibiting as much. Defendant does not address this language, nor can it. Second, Colo. Rev. Stat. § 6-1-113(2.9) sets a floor for what "a successful plaintiff may recover," not a ceiling limiting all potential remedies. *See, e.g.*, *Shekarchian v. Maxx Auto Recovery, Inc.*, 487 P.3d 1026, 1031 n.2 (Colo. App. 2019) ("The CCPA does not supplant or preempt other causes of action or remedies available to a plaintiff under the common law or other statutes."). Here, the statutory damages guaranteed by the CO PTFA are non-discretionary. *See* Colo. Rev. Stat. § 6-1-305 (1)(c) ("A person… **shall be liable in a private civil action** … **a penalty in the amount of at least three hundred dollars** ….") (emphasis added). Third, even if Colo. Rev. Stat. § 6-1-113(2.9) could somehow be read to bar Plaintiff's ability to recover statutory damages under Colo. Rev. Stat. § 6-1-305, such an application would run afoul of

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409 (2010).  Plaintiff is allowed to aggregate statutory damages under Fed. R. Civ. P. 23.  Preventing Plaintiff from doing so would directly conflict with Rule 23.

### III.    PLAINTIFF STATES A CLAIM UNDER THE COMMERCIAL LISTING PROVISION

#### A.    Defendant "Knowingly" Lists Coloradoans' Cellular Numbers

Defendant argues that Plaintiff fails to allege that Defendant "knowingly" lists her number because she "fails to allege any facts indicating that Apollo had any awareness her number was a Colorado mobile number."  MTD at 7.  This is wrong.  Initially, knowledge is only required by the Commercial Listing Provision as to whether the number is a cellular telephone number.  *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I) (no knowledge requirement as to Colorado residency).  But, in the end, it matters little because Plaintiff has alleged knowledge of Colorado residency.  "Actual knowledge" in Colorado means "one's awareness of the objective facts."  *Nelson v. United States*, 915 F.3d 1243, 1249 (10th Cir. 2019).  "Knowledge may be proved either by direct evidence of actual knowledge, or by circumstantial evidence."  *Id.* at 1254 (citing *Christoph v. Colo. Commc'ns Corp.*, 946 P.2d 519, 523 (Colo. App. 1997)) (cleaned up).  Read in light most favorably to Plaintiff, the Complaint amply alleges that Defendant has actual knowledge of Plaintiff's location and that her number was cellular.  Plaintiff alleges that Defendant generates lists of people and their cell phone numbers by "simply searching for individuals using filters such as … location."  Compl. ¶ 19.  The screenshot provided in ¶ 19 clearly shows the location parameter.  Moreover, when the listing is shown, the person's name and location is listed on top, along with mobile number "access" listed below.  Compl. ¶ 20 (screenshot showing listing's location in Phoenix, Arizona). As such Defendant "knows"—not merely "should have known"—where Plaintiff was located and generates her listing if a Colorado location filter is used.  At this stage, that is sufficient to demonstrate "knowledge."

#### B.    Apollo.io Is A "Directory" Which "Lists" Cellular Numbers

Defendant argues that it does not "list" numbers because it is not "shown in a 'simple series' or a 'series' of items 'listed one after the other.'"  MTD at 7 (no citation given).  This is wrong and contrary to what is alleged in the Complaint.  To "list" in this context means "to have or show

(someone or something) as part of a list, register, or record."[2] Here, the complaint demonstrates that, once search parameters are entered, "an apollo.io user is furnished with a list" of names and their corresponding cellular numbers. Compl. ¶ 20. As the screenshots in ¶¶ 20 and 23 show, individuals' names appear right next to a prompt to "access" their mobile numbers. Defendant cannot hide behind the fact that a search inquiry must be made first. The result is no different than a published phone book—a serialized listing of names and their corresponding "mobile" number access. The statute does not require the listing be made in a physical book or that no steps must be taken. And even a physical book would require one to open it before searching for the listed name.

Defendant's contention that it is not a "directory" likewise fails to convince. MTD at 8. As alleged, apollo.io, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" Compl. ¶ 48 (quoting Oxford Learner's Dictionary); *Directory*, Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"). Even according to the American Heritage Dictionary quoted by Defendant—a definition which is unchanged from before the invention of the internet— a "directory" includes a "classified list." MTD at 8. The plain words of the statute do qualify that it any listing need be in a physical book. Here, given that an apollo.io user "is furnished a list of" people's names, location, and phone number "matching the selected parameters," it is a "directory." Compl. ¶ 20.

Finally, Defendant argues that Plaintiff offers "no facts" that Defendant requested or received consent to list Plaintiff's cell phone number. MTD at 8. But consent is an affirmative defense. It is Defendant's burden to demonstrate that there was consent, not Plaintiff's burden to prove the absence of consent (which Plaintiff explicitly alleges, *see* Compl. ¶ 10).[3] It is unclear what more Plaintiff

---

[2] *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list
[3] Defendant argues in a footnote, MTD at 8 n.10, that Plaintiff's consent allegations are "undercut" by the fact that she once gave out her cellphone number. This is nonsensical. Just because Plaintiff may have posted her number in a semi-public forum in one limited instance does not mean she affirmatively consented to Defendant's listing of her cellular number on its own website for Defendant's (and not her) commercial gain. "Plaintiff has no relationship with Defendant whatsoever." Compl. ¶ 10. "Plaintiff had never heard of Defendant." Compl. ¶ 10.

could allege about something that did not happen. That is why consent is a defense, not a pleading burden – Plaintiff cannot prove a negative.

## IV.    DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL

A defendant who seeks to challenge the constitutionality of a statute can do so as a facial attack or an as-applied attack. Here, Defendant asserts a facial challenge. *See* MTD at 10.

"If it does not charge statutory overbreadth, 'a facial challenge must fail where the statute has a plainly legitimate sweep.'" *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (citation omitted). A facial attack on the constitutional validity of a statute is "the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). "[T]o prevail" against a facial attack, Plaintiff need only show that the Commercial Listing Provision "is constitutional in some of its applications." *Id*. Courts "disfavor[]" facial challenges. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). "Claims of facial invalidity often rest on speculation[,]" which "raise[s] the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id*. (quotation omitted). Such challenges also are "contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id*. (cleaned up).

For the following reasons, Defendant's facial constitutional challenge fails.

### A.    The Challenged Conduct Is Not "Speech"

Defendant assumes, without analysis, that its listing and sale of telephone numbers qualify as "speech." *See* MTD at 10. But the challenged conduct does not constitute "speech" at all. Precedent defines "speech" as expressive activity "intended to be communicative" and that, "in context, would reasonably be understood … to be communicative." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play" the Court must find that "[a]n intent to convey a particularized message was present" and that "the likelihood was great that

the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (cleaned up). Here, there is no "speech" at play.

To be sure, a speaker can use a phone number in speech. But in and of itself, a cellular telephone number listed online and sold to a purchaser is not a message or thought. Instead, such pure "fact[s]" are only "elements of speech." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 US. 47, 61-62 (2006), which qualify for First Amendment protection only when a speaker gives them "an expressive or communicative 'use'" in a complete speech act intended to express the speaker's own message. *Troster v. Pennsylvania State Dept. of Corrections*, 65 F.3d 1086, 1092 (3d. Cir. 1995) (citation omitted). Defendant does not argue or establish that its listing of cellular telephone numbers serves "an expressive or communicative use." Nor could it. The Commercial Listing Provision merely restricts the listing of a single discrete bit of data within Defendant's directory (rather than the directory as a whole). *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I). Defendant's First Amendment arguments thus fail at the outset.

### B. The Commercial Listing Provision Is Not Content-Based

Content-based restrictions on speech[4] warrant strict scrutiny when they are facially content-based or are content-based in their practical operation. *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61, 69, 76 (2022). The Commercial Listing Provision is neither. Nothing in the Commercial Listing Provision suggests the Legislature intended to suppress substantive communications discussing any idea, directed at promoting or criticizing a particular "topic," or aimed at expressing any particular "message." *City of Austin*, 596 U.S. at 69. Listing a telephone number does not "discuss" any "topic" or express a "substantive message." *Id.* at 71; *cf. In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (equating the "content" of a communication with its "substance" or "meaning"). Instead, the law simply seeks to strengthen protections against the undisputed privacy concerns laid out in Colo. Rev. Stat. § 6-1-301.

---

[4] The Court can skip this analysis if it agrees with Plaintiff that the challenged conduct is not "speech." The remainder of this brief thus assumes that the Court has held that the challenged conduct is "speech" and refers to it as such for readability purposes.

Defendant contends that the Commercial Listing Provision is content-based because it "'singles out specific subject matter.'" MTD at 13 (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169 (2015)). But *City of Austin* explicitly rejected "the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." 596 U.S. at 73-74 (emphasis in original) (holding statute distinguishing between signs advertising on-site businesses versus off-site businesses was not content-based). As *City of Austin* clarified, *Reed* was premised on "[t]he First Amendment's hostility to content-based regulation" aimed at "particular viewpoints" and prohibition of "public discussion of an entire topic." 596 U.S. at 70 (cleaned up). Tellingly, *Reed* deemed the subject regulation content-based because it singled out speech based on whether it "*conveys the message* of directing the public to church or some other 'qualifying event[,]'" and treated "the Church's signs inviting people to attend its worship services … differently from signs *conveying other types of ideas*." 576 U.S. at 164 (emphases added).

Defendant attempts to analogize to *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020) ("IMDB"). See MTD at 14. But *IMDB* is not instructive here. First, the speech in *IMDB* is content based because it concerned "free, publicly available" profiles of celebrities—who qualify as "public figures" as opposed to "paywalled" cellular telephone numbers of everyday "private individuals." *Lukis*, 542 F. Supp. 3d 831, 843 (quoting *IMDB*). *IMDB* also found that the statute at question, which "appear[ed] to target a single entity: IMDb.com," *IMDB*, 962 F.3d at 1116, was a speaker-based restriction because "it restricts only a single category of speakers," *id.* at 1120. Here, Defendant cannot argue that the purported PTFA restriction is speaker-based because the PTFA applies to any "person." Second, *IMDB* relies entirely on *Reed*, which has been abrogated in light of *City of Austin*. *See Project Veritas v. Schmidt*, 125 F.4th 929, 948 (9th Cir. 2025) (describing how *City of Austin* "undercut[s]" *Reed*). Thus, although it may "touch" content, the PTFA is not a facially content-based restriction because it does not seek to restrict a viewpoint.

Defendant also cites a string of cases for the proposition that "restrictions on disclosing phone numbers or similar personal data are content-based." MTD at 10. But every case cited by Defendant analyzed statutes restricting either disclosures of a **limited group** of individuals' contact information or disclosures made by a **limited group** of speakers, rather than the public writ large. *Sorrell v. IMS*

*Health Inc.*, 564 U.S. 552, 564 (2011) ("[T]he statute disfavors specific speakers, namely pharmaceutical manufacturers … on its face burdens disfavored speech by disfavored speakers."); *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) (restriction content-based because it "regulates only yellow pages directories" rather than directories generally); *IMDB*, 962 F.3d at 1116 (statute singles out a single category of speaker); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017) ("home address or telephone number of any elected or appointed [California] official" but not population at large); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (largely same). In other words, the "content-based" restrictions at issue in these cases restricted ***whose*** information could be disclosed by ***whom***, thus constituting prohibitions of "public discussion of an entire topic." *Reed*, 576 U.S. at 169. A blanket ban on the commercial listing of the cellular telephone number(s) (not a viewpoint in any way) belonging to any Colorado resident (rather than, say, only the cellular telephone numbers of law enforcement officials) in a directory by *anybody* is content-neutral because it does not discriminate by subject matter or speaker.[5] Like the regulation at issue in *City of Austin*, the Commercial Listing Provision is "agnostic" about the substantive content or message expressed by the speaker. And "absent a content-based purpose or justification," a statute "is content neutral and does not warrant the application of strict scrutiny." *Id.* at 69. The Commercial Listing Provision is thus content neutral.

### C.    Statutes Recognizing Privacy Torts Are Not Subject To Strict Scrutiny

Even if the Commercial Listing Provision were content-based, Supreme Court precedent recognizes that when a content-based restriction has a history of "longstanding coexistence … with the First Amendment," courts should not apply strict scrutiny. *Vidal v. Elster*, 602 U.S. 286, 288 (2024). The District of New Jersey's decision in *Atlas Data Priv. Corp.* is instructive on this point.

---

[5] Defendant's cited cases are inapposite for additional reasons. Several of the cases cited by Defendant held that a statute is content-based if applying the statute "requires the examination" of the disclosure—precisely the test rejected by *City of Austin*. *See Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1013 (E.D. Cal. 2017). Others simply assumed that a statute prohibiting disclosure of law enforcement officers' names, addresses, and phone numbers was facially content-based without explaining how such data in itself constitutes a topic or message. *See Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244 (N.D. Fla. 2010). Here, Defendant offers no example of how its commercial listing of phone numbers would be either a "topic" or "part of a message."

In analyzing New Jersey's Daniel's Law,[6] the District of New Jersey held that because "Daniel's Law furnishes a remedy for disclosing certain private information" it was "a privacy statute." *Atlas Data Priv. Corp.*, 758 F. Supp. 3d at 336. And because the law was a privacy statute, its content-based regulation of speech was not subject to strict scrutiny. *Id.* ("The words 'strict scrutiny' and the strict scrutiny standard of review, however, do not appear in the above cited Supreme Court decisions ... Instead, the Supreme Court has outlined three specific factors that a court must consider in balancing the right of privacy against the right of free speech.") (citing *The Fla. Star v. B.J.F.*, 491 U.S. 524, 536 (1989)).

Here, the Commercial Listing Provision creates a tort closely related to three traditional privacy torts – public disclosure, misappropriation of name and likeness, and intrusion upon seclusion – which have long existed in harmony with the First Amendment. **First**, the tort created by the Commercial Listing Provision resembles the "public disclosure of private information" tort recognized by virtually every state, including both Colorado and Washington. *See Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 966 (Colo. App. 2000) (elements of claim in Colorado). The Commercial Listing Provision similarly targets "listings" that give publicity to facts generally of no legitimate concern to the public, with the only difference being that the Provision provides a statutory remedy when the disclosure is done "for a commercial purpose." **Second**, the Commercial Listing Provision, by extension, protects the right to control one's name, like the misappropriation-of-name-and-likeness tort. The economic value of the prohibited listings is directly related to the use of individuals' names, as it is impossible to list and sell someone's phone number as that person's phone number, without also using their name. "The tort of invasion of privacy by appropriation of a plaintiff's name or likeness has been recognized throughout most of the United States, either statutorily or through the common law." *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001). **Third**, the Commercial Listing Provision protects the interests underlying the "intrusion upon seclusion" tort, which "encompasses intrusions into a person's private concerns

[6] "Daniel's Law provides that judges, prosecutors and other law enforcement officers as well as their immediate family members ('covered persons') may request in writing that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers." *Atlas Data Priv. Corp.*, 758 F. Supp. 3d at 329.

based upon a reasonable expectation of privacy in that area." *Golec v. Boring*, 2024 WL 5102044, at *8 (Colo. App. Dec. 12, 2024). Preventing the commercial listing of individuals' cellular telephone numbers makes it harder for third parties to intrude upon their private lives. *See* Compl. ¶¶ 2-4, 8, 32-35.

The "longstanding coexistence" between the privacy torts incorporated in statutes like the CO PTFA and the First Amendment forecloses the application of strict scrutiny. *See, e.g.*, *Atlas Data Priv. Corp. v. We Inform, LLC*, Case No. 1:24-cv-04037, ECF No. 23 at 15-22 (plaintiff's opposition to motion to dismiss, fully detailing the Supreme Court's long history and tradition of rejecting strict scrutiny for privacy torts); *Atlas Data Priv. Corp.*, 758 F. Supp. 3d at 335 (referring to plaintiff's analysis); *see also Kellman*, 599 F. Supp. 3d at 901 ("[T]he Supreme Court has expressly held that imposing liability for violating the traditional publicity right does not necessarily offend the First Amendment."). Indeed, "the sensitivity and significance of the interests presented in clashes between [the] First Amendment and privacy rights counsel relying on limited principles that sweep no more broadly than the appropriate context of the instant case." *The Fla. Star*, 491 U.S. at 533. This approach to conflicts between privacy and the First Amendment is necessary because privacy cases balance free speech with the constitutional interest "in avoiding disclosure of personal matters." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 457 (1977). When "the exercise of free speech rights conflicts with another fundamental right," reasonable compromises "survive[] strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992). By itself, this is enough to defeat Defendant's facial challenge.

### D.    The Commercial Listing Provision Regulates Solely Commercial Speech, Thus Strict Scrutiny Does Not Apply

Defendant argues that the Commercial Listing Provision is not subject to intermediate scrutiny even though the statute is limited to "commercial purpose." MTD at 14. Defendant's argument makes no sense.

Defendant first analogizes to *Jackson v. Whitepages*, 2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025) but *Jackson* explicitly found that, because the statute makes any disclosure unlawful "and does not otherwise distinguish commercial from noncommercial disclosures," it is not commercial

speech. *Id.* at \*10. Here, the Commercial Listing Provision contains precisely the bright line division between commercial and non-commercial conduct that was lacking in *Jackson* and Defendant's other cited cases. Because Defendant's listing of Plaintiff's cellular telephone numbers is purely commercial, and because the Commercial Listing Provision, on its face, is only applicable to commercial speech, strict scrutiny cannot apply to any conduct covered by the Commercial Listing Provision, including Defendant's alleged conduct. *See, e.g.*, *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at \*2 (W.D. Wash. Apr. 22, 2021).

Defendant next cites *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) for the proposition that its listings cannot be commercial speech because the "listing does not refer to a particular product… it is the product." MTD at 15 (cleaned up). But the *Hilton* court was simply noting that the sale of artistic or expressive materials does not alone change those materials' protected status – much like the contents of a magazine article would not be commercial speech merely because the magazine was sold for profit. Conversely, there is nothing expressive about the cellular telephone numbers at issue here.

Defendant contends that despite the statute's reference to "commercial purpose," publication of cell phone numbers is not "commercial" speech and "economic motivation" does not "transform fully protected speech into commercial speech." 5. But the PTFA's "commercial purpose" is an essential element which encompasses the entire prohibition. *See* Colo. Rev. Stat. § 6-1-304(4)(a) (requiring that a "listing" be "for a commercial purpose" as an essential element of any claim). The Commercial Listing Provision was thus plainly drafted to exclusively apply to commercial speech, which, as the Supreme Court has held, is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). It is impossible for the Commercial Listing Provision to regulate speech subject to strict scrutiny.

Defendant's argument also misstates and oversimplifies the standard for determining whether speech is commercial. In *Ariix, LLC v. NutriSearch Corporation*, the Ninth Circuit held that while "[c]ommercial speech is usually defined as speech that does no more than propose a commercial transaction[,] ... [c]ourts view this definition as just a starting point, ... and instead try to give effect

to a common-sense distinction between commercial speech and other varieties of speech" through "analysis [that] is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *Ariix*, 985 F.3d 1107, 1115 (9th Cir. 2021) (cleaned up). Even "speech that does not propose a commercial transaction on its face can still be commercial speech." *Id.* "'Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation.'" *Id.* at 1115–16 (quoting *Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (in turn quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67(1983)) (brackets in original). In *Bolger*, the Supreme Court made clear that it did not "mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial." *Bolger*, 463 U.S. at 68 n.14; *see also Ariix*, 985 F.3d at 1116 ("These so-called *Bolger* factors are important guideposts, but they are not dispositive.").

On this issue, Judge Torres' analysis in *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("*Hearst I*") is particularly on point. In *Boelter*, the statute at issue "restrict[ed] the sellers of certain products from disclosing the identity of individuals who purchase those products." *Id.* at 445. Judge Torres held that "businesses' increasing ability to profit from the collection and sale of data supports the conclusion that disclosing consumer information is—primarily, if not entirely—an economic act." *Id.* (citation omitted). Even though it was "conceivable that Defendant's disclosures may be used for non-economic purposes[,]" Judge Torres still held that "such potential does not dilute the speech's commercial character." *Id.* at 445-446 (citations omitted).[7] Likewise, here, Plaintiff's allegations establish that Defendant's listing of Plaintiff's cellular telephone number is a purely economic act. *See, e.g.*, Compl. ¶¶ 23-27 (explaining how **Defendant lists cellular telephone numbers behind a paywall and sells access for profit**); *see also Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 597 (S.D.N.Y. 2016) ("The

---

[7] Indeed, Defendant explicitly suggests to its users that they can "[t]ake their outbound [sales calls] to the next level" if they "try calling your prospect's cell phone right before or after business hours[.]" https://www.apollo.io/magazine/the-5-best-sales-sequences-weve-ever-seen.

disclosure of [personal reading information] to data miners and the sale of PRI to organizations that use it for solicitation purposes is speech 'related solely to the economic interests of the speaker and its audience.'") (quoting *Cent. Hudson*, 447 U.S. at 561).

Further, "[a] related line of cases has applied an intermediate level of scrutiny, akin to a commercial speech inquiry, to regulations restricting sales of [] data." *People v. Martinez*, 534 P.3d 72, 83 (2023). That line of cases begins with *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 751 (1985), in which the Supreme Court "recognized that not all speech is of equal First Amendment importance" and noted that "[i]t is speech on matters of public concern that is at the heart of the First Amendment's protection." 472 U.S. at 758–59 (cleaned up). Evaluating the "content, form, and context" of a credit report (*id.* at 761), the court concluded that the report contained speech on matters of purely private concern and therefore warranted reduced constitutional protection. *Id.* at 762-63. Specifically, the Supreme Court held that the credit report "was speech solely in the individual interest of the speaker and its specific business audience"; that special protection for such credit reporting was not necessary to ensure that "debate on public issues [will] be uninhibited, robust, and wide-open"; and that, like similarly profit-driven commercial speech, credit reporting was "unlikely to be deterred by incidental state regulation." *Id.* at 762 (cleaned up). Numerous courts have declined to apply strict scrutiny on this basis. *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *14-16 (N.D. Cal. Aug. 16, 2021); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 n.8 (D. Mass. 2024); *Trans Union Corp. v. Federal Trade Com.*, 245 F.3d 809, 818 (D.C. Cir. 2001) ("Trans Union I"); *Trans Union LLC v. Federal Trade Com.*, 295 F.3d 42, 52–53 (D.C. Cir. 2002) ("Trans Union II"); *Individual Reference Servs. Grp., Inc. v. F.T.C.*, 145 F. Supp. 2d 6, 40–41 (D.D.C. 2001), *aff'd sub nom. Trans Union II*, 295 F.3d 42 (D.C. Cir. 2002); *Martinez*, 534 P.3d at 83.

Thus, "[e]ven if the disclosures" at issue "do not strictly satisfy the definition of commercial speech, [such] speech … is subject to 'many of the same concerns that argue in favor of reduced constitutional protection' for commercial speech." *Saunders*, 711 F. Supp. 3d at 33 n.8 (quoting *Dun & Bradstreet*, 472 U.S. at 761-762 & n.8). "[L]ike the credit report at issue in *Dun & Bradstreet*, [Defendant's listings] with Plaintiff['s] personal information concern[ ] no public issue because [they

are] speech solely in the individual interest of the speaker [i.e. Defendant] and its specific business audience [i.e. Defendant's subscribers]." *Brooks v. Thomson Reuters*, 2021 WL 3621837, at *15 (cleaned up). "Also, that [Defendant] only shares Plaintiff['s] personal information with its [] subscribers who specifically pay for it, and not with the general public, cuts heavily against concluding that [Defendant]'s conduct is of public concern." *Id.* "If anything, as the District of Columbia Circuit correctly pointed out in *Trans Union Corp. v. FTC*, the speech at issue here is less of the public's concern than the credit report in *Dun*[] *& Bradstreet* because it involves the personal information of private individuals, not incorporated businesses like the respondent in *Dun & Bradstreet*." *Id.* (cleaned up). "And the speech here is 'solely motivated by the desire for profit,' which 'is a force less likely to be deterred than others,' further counseling in favor of the application of intermediate scrutiny." *Saunders*, 711 F. Supp. 3d at 33 n.8 (quoting *Dun & Bradstreet*, 472 U.S. at 762). Thus, intermediate scrutiny applies.

### E.    Defendant Has Waived The Argument That The Commercial Listing Provision Does Not Survive Intermediate Scrutiny

Defendant's MTD fails to argue that the Commercial Listing Provision does not survive intermediate scrutiny. Any such argument is thus waived. *See Kolebuck-Utz*, 2021 WL 1575219, at *3 ("In support of its motion, Defendant must cite to persuasive or controlling cases addressing the application of the intermediate scrutiny factors required for similar commercial speech as that alleged by Plaintiff. Defendant fails to do so. Therefore, Defendant's briefing provides the Court no basis to dismiss Plaintiff's claim on First Amendment grounds.") (cleaned up); *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 844 (N.D. Ill. 2020) ("Whitepages does not explain why the [challenged conduct] nevertheless qualif[ies] as noncommercial speech. And if the free previews are commercial speech, their regulation would be subject to only intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 562-64 (1980), another case that Whitepages does not cite. Its underdeveloped First Amendment argument accordingly is forfeited.") (cleaned up).[8]

---

[8] In any event, the Commercial Listing Provision clearly survives intermediate scrutiny because "(1) the speech "concern[s] lawful activities and [is] not [ ] misleading;" (2) the government has a "substantial" interest in restricting the speech; (3) the regulation "directly advances the governmental interest" involved; and (4) the regulation is not "more excessive than is necessary to

In the substantially similar matters *Clark v. Whitepages, Inc.*, No. 2:25-cv-00810-TL (W.D. Wash.) ("*Clark*"), *McClure v. RocketReach LLC*, No. 2:25-cv-00986-TL (W.D. Wash.) ("*McClure*"), and *Huiskamp v. ZoomInfo Technologies LLC*, No. 3:25-cv-05443-TL (W.D. Wash.) ("*Huiskamp*"), among others, multistate consortiums of attorney generals have submitted *amicus* briefing arguing, *inter alia*, that (1) the PTFA regulates commercial speech, (2) the nonconsensual publication and sale of consumers' private data is commercial speech, and (3) the First Amendment does not protect the nonconsensual publication of consumer cell phone numbers, but even if it did, the PTFA satisfies intermediate scrutiny. *See Clark*, ECF No. 48, *McClure*, ECF No. 40-2; *Huiskamp*, ECF No. 37-1.[9] Plaintiff reasonably expects that a similar amicus brief will be filed in this case. To the extent one is not, Plaintiff incorporates all such arguments (including those raised in *Clark*, *McClure*, and *Huiskamp*, to the extent they are not raised here) against Defendant.

**F.** **Even If Defendant Were Correct That Strict Scrutiny Applies, The Commercial Listing Provision Survives**

Even if the Court holds that Defendant is correct that strict scrutiny applies here, the Commercial Listing Provision survives.

"To satisfy strict scrutiny, a restriction on speech is justified only if the government demonstrates that it is narrowly tailored to serve a compelling state interest." *Meinecke v. City of Seattle*, 99 F.4th 514, 524 (9th Cir. 2024) (cleaned up).

**1.** **The Commercial Listing Provision Serves A Compelling State Interest**

Colorado has a compelling interest in regulating entities like Defendant that encroach on individuals' cell phone privacy. The Supreme Court has frequently emphasized that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown*, 447 U.S. 455, 471 (1980); *see also Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (same). And this Circuit has "never held that the interest in privacy ends at one's home." *Victory Processing, LLC v. Fox.* 937 F.3d 1218, 1227 (9th Cir. 2019). Indeed, it is binding authority in this Circuit not only that "[t]he State's interest in

---

serve that interest." *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566. Plaintiff is happy to submit supplemental briefing on this issue should the Court request it.

[9] Attached as Exhibits as Exs. 1-3 to Plaintiff's Request for Judicial Notice, respectively.

protecting the well-being, tranquility, and privacy… is certainly of the highest order in a free and civilized society" but that "the interest in protecting privacy applies with equal force to cellular devices." *Victory Processing, LLC*, 937 F.3d at 1227 (9th Cir. 2019) (cleaned up); Compl. ¶¶ 8, 29-35 (detailing the privacy interests implicated by services like Defendant's).

The Colorado Legislature "f[ound], determine[d], and declare[d]" that such "matter[s] **vitally affect[] the public interest**; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones." Colo. Rev. Stat. § 6-1-301 (emphasis added); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 197 (S.D.N.Y. 2017) ("Hearst II") (the "legislature's stated interest in protecting consumer privacy from nonconsensual disclosure to third parties—and particularly in this case, where Defendant traded and sold Plaintiff's personal information for its own gain—is a substantial government interest.").

Case law has affirmed this state interest in privacy protection in numerous contexts analogous to here. This includes cases on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See, e.g.*, *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (collecting cases). It also includes case law on states' right of publicity statutes. *See, e.g.*, *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d at 900; *Kolebuck-Utz*, 2021 WL 1575219, at *3; *Camacho v. PeopleConnect, Inc*, 2022 WL 22913841, at *19 (S.D. Cal. July 18, 2022); *Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *20 (S.D. Cal. July 18, 2022). And it has been recognized by case law about the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and its state analogues. *See, e.g.*, *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024); *Hearst I*, 192 F. Supp. 3d at 448 (regarding the Michigan Video Rental Privacy Act).

### 2.    The Commercial Listing Provision Is Narrowly Tailored

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Victory Processing, LLC*, 937 F.3d at 1227–28 (cleaned up). Here, the Commercial Listing Provision does exactly that: it only bars listings of cellular telephone numbers that are done knowingly, in a directory, for a commercial purpose, without affirmative consent through written, oral, or electronic means. Colo. Rev. Stat. § 6-1-304(4)(a)(I). In other

words, Defendant is not prohibited from making the speech it desires, even for a commercial purpose. It simply must first obtain affirmative consent so that it is not invading individuals' privacy.

Defendant argues that the Commercial Listing Provision is unconstitutionally underinclusive because "[i]t targets certain channels of speech while leaving untouched countless other means of distributing the same information." MTD at 14. But Defendant misses that the purpose of the statute is to weed out the commercial abuse of cellular telephones, not to prevent anybody from voluntarily sharing their own cell phone number.[10]

The Commercial Listing Provision is sufficiently inclusive to advance this compelling interest. "Although a law's underinclusivity raises a red flag, the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (cleaned up). The Supreme Court has "accordingly upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests." *Id.* (collecting cites).[11]   Pertinently here, Defendant's website and those like it redisclose these numbers in a way that greatly expands access to that information, further invading that individual's privacy and eroding his or her autonomy and control over who has access to his or her cellular telephone number. On this point, *Atlas Data Priv.* is instructive:

> [T]his type of information is generally more difficult to extract from public records than information found on the Internet. The Supreme Court has emphasized that the right of privacy in compiled or computerized information does not evaporate simply because the information may be found in other places. It explained that there is "a vast difference between public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 764[ ] (1989).

---

[10] This challenge is also premature because it is a contested issue of fact whether Plaintiff's and class members' cellular telephone numbers were publicly available.

[11] Despite conceding "it is very likely that most of the relevant phone numbers are cell phone numbers" (MTD at 14 n.11) Defendant also argues that the Provision is underinclusive because it only bars cellular numbers, not landlines. *Id.*  This ignores that the Commercial Listing Provision was passed specifically to target cellular numbers because, as Representative Cloer noted, "'[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important.'"  Compl. ¶ 2.

*Atlas Data Priv.*, 758 F. Supp. 3d at 338.

Finally, Defendant notes that the statute "seemingly" excludes many non-governmental sources" through "[i]ts 'commercial purpose' limitation [which] exempts churches, schools, political organizations, and others who might share the same phone numbers for different ends." MTD at 17. This is evidence that the law is narrowly tailored, not that it is underinclusive. Individuals willingly provide their phone numbers to the groups listed by Defendant. When somebody receives a call from their church, their own or their child's school, or their chosen political organization, that is precisely the type of call they can "expect [] to be important." Compl. ¶ 2. Schools, churches, and political organizations are not profiteering from Colorado residents' data by listing them in for-profit directories without consent, as Defendant does. If they were, they too would be invading individuals' privacy and running afoul of the Commercial Listing Provision.

### 3.    <u>Less Restrictive Means Are Less Effective</u>

Defendant argues that the Commercial Listing Provision is not the least restrictive means to advance the interests asserted. Defendant is wrong.

It is common sense that by preventing data brokers, like Defendant, from listing cell phone numbers, telemarketers will be stymied from reaching Coloradoans. Defendant suggests three purportedly "less restrictive alternatives" to the Commercial Listing Provision. But each one is flawed and would be less effective.

**Targeting wrongful conduct, not protected speech:** Defendant proposes that Colorado can prevent fraud through other laws such as the TCPA and various other state-level laws including the PTFA's other provisions. MTD at 18. But this ignores the PTFA's structure and takes an overly narrow view of the compelling state interests advanced by the Commercial Listing Provision. Indeed, Colo. Rev. Stat. §§ 6-1-304(1)-(3) *do* effectively ban "fraud and harassment" by commercial telephone sellers. The Commercial Listing Provision, meanwhile, protects the separate interests of privacy, safety, and autonomy of Colorado residents in relation to their cell phones by prohibiting the kind of unauthorized, for-profit use of personal information at issue here.

**Exempting already-public information:** Defendant next proposes that listings of "cell phone numbers that the government or owners previously disclosed publicly could be excluded from

coverage" by the Commercial Listing provision. MTD at 19. But that is a less effective alternative to the Commercial Listing Provision because, as outlined *supra* § IV.F.2, even if an individual Colorado resident's cellular telephone number is already in some manner publicly available, Defendant's listings redisclose Plaintiff's and class members' cellular telephone numbers in a new, packaged and easily searchable form, and thus make them drastically more accessible to telemarketers.

**Limiting (Statutory) Remedies:** Defendant argues that Colorado could "enact stricter penalties on acts of fraud or harassment" and "lesser penalties, such as injunctive relief" to "combat the harms the PTFA seeks" to prevent. MTD at 19. But Defendant's non-compliance with the Commercial Listing provision, even *with* statutory remedies available, belies this point. "[T]he economic motive driving the disclosure of consumer identifying information makes the speech more 'durable' and less likely to be deterred by government regulation" absent statutory damages. *Hearst I*, 192 F. Supp. 3d at 446 (citation omitted). And "while actual damages only compensate the victim, statutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023).

### G.    The Listing Provision Is Not Unconstitutionally Vague

Defendant argues that the CO PTFA is unconstitutionally vague because it "does not specify how entities can determine whether a phone number is a Colorado mobile number subject to the statute." MTD at 10. Specifically, Defendant complains, without any foundation, that it may not be able to identify a Colorado resident from the listed area code because "an area code is not always accurate" and that "location data" cannot help because it does "demonstrate whether an individual is a Colorado resident or just visiting." MTD at 11. This wrong for many reasons. First, that is not a proper vagueness challenge. A statute only "fails to comport with due process" under the vagueness doctrine if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010). Here, Defendant plainly knows what is prohibited, it just purports to not know how to comply. It is Defendant's burden to determine how to comply with an abundantly clear statute. Defendant thus cannot point to any text of the statute that is vague

at all, let alone unconstitutionally so. Further, to challenge a law as facially unduly vague, "the complainant must demonstrate that the law is impermissibly vague in **all** of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982) (emphasis added). And "[s]tatutes that relate to the economic regulation of businesses are subject to a less strict vagueness test because their subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1132 (N.D. Cal. 2017) (quoting *Vill. of Hoffman Ests.*) (cleaned up). Defendant's bald assertion that it is *impossible* to know whether a telephone number belongs to a Colorado resident is both narrow (limited to one application) and speculative. It is also demonstrably false, *see infra* § IV.H. Defendant thus fails to establish facial vagueness. Finally, the Complaint demonstrates that Defendant knows where the listees are located and that the numbers are cellular. *See* Compl. ¶¶ 19, 22 (screenshot) (alleging location filtering). And even if Defendant were correct (which it is not) that it is impossible to know if an individual resides in Colorado, the statute has no such mandate. *See supra* § III.A.

**H.   The Listing Provision Does Not Violate The Dormant Commerce Clause**

Defendant also raises a defense under the dormant commerce clause ("DCC"), claiming that the burdens imposed by the CO PTFA are "clearly excessive in relation to the putative local benefits." MTD at 11 (citation omitted). Defendant is wrong.

Initially, the argument is premature. *E.g. Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) ("[T]he parties need to develop what Google's burdens of compliance would actually be under the [state law], if it were read in the way the Plaintiffs suggest"). But regardless, Apollo's argument that compliance with the CO PTFA on a state-specific basis is impossible is demonstrably false. Indeed, Apollo's B2B lead generation competitors have entered into class action settlements of right-to-publicity cases in which they have represented that they can do precisely what Apollo claims is impossible. For example, Apollo's competitor Zoominfo settled right to publicity claims with California, Illinois, Indiana and Nevada "residents" despite the fact that the only addresses associated with ZoomInfo's directory pages were business addresses. *See. Ramos et al. v. ZoomInfo Technologies, LLC,* Case No. 21-cv-02032, (N.D. Ill.), Document #: 99 ¶ 16 (Second amended class

action complaint, including screenshot showing at-issue preview pages, with only work address shown as address information); Document #: 136 (Order finally approving class action settlement for settlement classes of California, Illinois, Indiana, and Nevada "residents whose identity was the subject of a directory preview page published by ZoomInfo"); Document #: 104-1 at 17 (Settlement agreement prospective relief on behalf of state-specific classes).[12]   In other words, it is clearly possible for B2B businesses to (1) identify "residents" of specific states, and (2) implement state-resident-specific modifications to its search results.

Apollo's argument is also legally flawed.   First, counter to Defendant's constitutional arguments, the CO PTFA represents a compelling state interest. *See supra* § IV.F.1.   Further, "Defendant[] fail[s] to show how the purported burden, which could be nothing more than merely incidental to the state['s] efforts to protect its residents, even comes close to reaching a level of being 'clearly excessive.'" *Camacho*, 2022 WL 3093306, at *23. Contrary to Defendant's presentation (MTD at 11-12), Plaintiff does not seek to apply the Commercial Listing Provision to commerce occurring outside of Colorado. Rather, she seeks to hold Defendant accountable for its Colorado-based conduct, including its collection and use of Colorado residents' cellular telephone numbers in violation of a Colorado statute. *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *7 (N.D Ill. Sept. 15, 2017) (applying Illinois law to company obtaining biometric data from photos uploaded in Illinois does not offend Commerce Clause); *cf. Envt'l Def. Fund v. Massey*, 986 F.2d at 531 (observing that the presumption against extraterritorial application does not apply when the at-issue conduct occurs within the regulating jurisdiction's borders).

Defendant would prevent states from ever regulating any conduct that occurs on the Internet. Yet courts regularly reject dormant commerce clause challenges to laws regulating or prohibiting Internet activity directed at a state's consumers. *See, e.g., MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 840-45 (Md. Ct. Spec. App. 2006) (upholding Maryland anti-spam email law); *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1263-66 (1st Dist. 2002) (same; California); *State v. Heckel*, 24 P.3d 404, 412 (Wash. 2001) (same; Washington).

---

[12] Attached as Exhibits 4-6 to Plaintiff's Request for Judicial Notice, respectively.

This Court's analysis in *Kellman v. Spokeo* is instructive. In that case, Spokeo, a "website that provides information about particular individuals aggregated from various sources" argued that enforcement of the right to publicity laws of Ohio, Indiana, and California would run afoul of the dormant commerce clause because, as the Court, put it, Spokeo "will have to follow different states' laws about what it can and cannot show to users." *Kellman*, 599 F. Supp. 3d at 899. This Court correctly held that because "this is not a case in which the statutes preclude economic activity that takes place wholly outside of their states' borders or directly control commerce wholly outside of their states' borders[,]" nor was there "any issue of states controlling prices in other states, which is all that many of the Supreme Court's precedents have been understood to bar" the Dormant Commerce Clause was inapplicable. *See id.* The same is true here.

*In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2197546 (N.D. Cal) (Donato, J.) is similarly instructive. There, the plaintiffs—all Illinois residents—alleged that their "biometric data was harvested" by Facebook and thus violated the Illinois Biometric Information Privacy Act ("BIPA"), which "requires private entities to provide notice and obtain consent when either 'biometric identifiers or biometric information' are at issue." *Id.* at *2, *6. Facebook argued that applying BIPA violated the dormant commerce clause because some of its conduct occurred outside Illinois. *Id.* at *4. But the Court found that because Facebook's conduct had close ties to the state, "the application of BIPA to Illinois users [did] not have the impermissible 'practical effect' of regulating commerce wholly outside Illinois." *Id.* (quoting *Healy*, 491 U.S. at 332). Instead, and similar to the case at bar, the court observed that "[t]his lawsuit is under a[] [single] state statute on behalf of [a single state's] residents who used Facebook in [that state]" and "[n]othing indicates that liability under BIPA would force Facebook to change its practices with respect to residents of other states." *Id.* This is particularly apt here, given Defendant's clearly strained impossibility arguments. *See also Colombo v. YouTube, LLC*, 679 F. Supp. 3d 940, 946 (N.D. Cal. 2023) (affirming *In re Facebook*'s reasoning following *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, (2023)).

**CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied in its entirety. In the alternative, Plaintiff requests leave to amend to address any deficiencies the Court may identify.

Dated:  December 9, 2025

**BURSOR & FISHER, P.A**.

By:  */s/ Matthew A. Girardi*
        Matthew A. Girardi

Matthew A. Girardi*
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

*admitted pro hac vice*

*Attorneys for Plaintiff*